246 N.J. Super. 397 (1991)
587 A.2d 1291
ROBERT FREEDMAN AND DEBORAH NARCISI FREEDMAN, PLAINTIFFS-APPELLANTS,
v.
CLONMEL CONSTRUCTION CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1991.
Decided March 8, 1991.
*398 Before Judges PRESSLER, DEIGHAN and ARNOLD M. STEIN.
Lawrence B. Sachs argued the cause for appellants (Lawrence B. Sachs on the brief and reply brief).
Vincent DiMaiolo, Jr. argued the cause for respondent (Vaida & Vaida, attorneys; Vincent DiMaiolo, Jr. on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
*399 The settlement approved by New Jersey State Bar Ass'n v. New Jersey Ass'n of Realtor Bds., 186 N.J. Super. 391, 395-398, 452 A.2d 1323 (Ch.Div. 1982), affirmed as modified, 93 N.J. 470, 461 A.2d 1112 and 94 N.J. 449, 467 A.2d 577 (1983), establishes rules for the preparation of real estate contracts by brokers. Brokers are permitted to prepare such a contract provided it includes in its body the prescribed attorney review clause and conspicuously bears at its head, in the prescribed language, the notification that it constitutes a legally binding contract which will become final within three business days unless the contracting party's attorney, after review, cancels it during that period. The novel question raised by this appeal is whether these attorney-review requirements apply as well to a broker-prepared document materially modifying the contract. We hold that they do and accordingly reverse the summary judgment dismissing the complaint of plaintiff-buyers, Robert and Deborah Freedman.
Defendant Clonmel Construction Corporation is a builder of houses. In early November 1988, through the offices of its broker, Weichert Realtors, it contracted with plaintiffs, then engaged to be married, for the sale of a new house expected to be completed some time in early summer 1989. Construction was to commence after final subdivision approval and the buyers' obtaining of a mortgage commitment. The purchase price was $381,500. Plaintiffs made an initial deposit of $1,000 which they later increased to $67,000. Following their execution of the contract, it was sent to their attorney for review.[1] *400 As a result of that review and ensuing correspondence between the attorneys for both parties, various modifications in the contract were made including an extension of time for meeting the $225,000 mortgage commitment contingency from December 23, 1988, to January 23, 1989. On January 25, 1989, following plaintiffs' marriage, a superseding contract was executed generally reiterating the original contractual provisions but changing the house model and options plaintiffs had selected and increasing the purchase price to something over $400,000. Curiously, the date for meeting the mortgage contingency remained January 23, 1989.
The critical document in this case is a letter on unmarked paper addressed to defendant dated January 27, 1989, and signed by plaintiffs on February 5, 1989. Its operative language is that "This letter will serve as notice that the mortgage contingency stated ... [in the contract] is hereby waived." The letter was countersigned by a principal of defendant on February 12, 1987, and bears as witness, the signature of Weichert's selling realtor. It contained neither the head legend nor the attorney review clause required for initial broker contracts. On February 14, 1987, it was sent to plaintiffs' lawyer by Weichert's listing realtor with a note reading in full as follows:
Enclosed is a signed copy of the mortgage waiver for Mr. and Mrs. Freedman. If you have any questions, please call me.
The record does not indicate what, if any, further communications among any of the parties ensued respecting the "mortgage waiver." All that does appear is that later in February, plaintiffs were still attempting to obtain a mortgage. Nor is there any indication in the record of what consideration, if any, there was for the waiver or the reasons for its solicitation or execution.
In April 1989 plaintiffs separated and attempted to cancel their contractual obligations. Their attorney wrote to defendant's attorney explaining that the impending termination of the short-lived marriage would prevent plaintiffs from obtaining and qualifying for the required mortgage loan. He therefore *401 asked that the contract be deemed null and void under the mortgage contingency clause and that the deposit be returned to his clients. He also noted that only the foundation of the house had thus far been constructed and no further work should proceed on plaintiffs' account. The demand for the return of the deposit was refused and this action ensued.
The record on defendant's motion for summary judgment, made and granted prior to discovery and prior to plaintiffs' opportunity to amend the complaint to assert claims against the broker, was meager. With respect to the waiver of the mortgage contingency, plaintiffs' verified complaint asserts that it was based on their expectation that their combined incomes would qualify them for the necessary financing. It then asserts that the marital problem would prevent them from obtaining that financing. In his certification opposing the motion, plaintiff Robert Freedman further claims with respect to the waiver that:
It is my understanding that defendant is now claiming that I waived the mortgage contingency in early February, 1989 when I allegedly signed a document prepared by Reisha Martin, a real estate agent by [sic] Weichert Realtors. First, I do not recall signing any such document and further even if such a document were signed, I never had any discussions with either the defendant or my attorney concerning the effect of such a waiver. I most certainly would not have requested that such a document be prepared as I knew I could not proceed to closing without a mortgage. Moreover, I would not have requested that Reisha Martin prepare such a document had I wanted to waive the benefit of the mortgage contingency. I would have had my attorney, Lawrence B. Sachs, Esq. prepare same. In fact, it is my understanding that Mr. Sachs did not receive a copy of the alleged waiver until several days after it was allegedly executed.
Plaintiffs' attorney, who also filed an opposing certification, had this to say:
It was not until February 13, 1989 that I received a copy of the contract which had apparently been executed two weeks earlier and it was not until February 14, 1989 that I received a purported waiver of the mortgage contingency prepared by Reisha Martin of Weichert Realtors which I had neither authorized nor had been made aware of. In fact, had anyone approached me concerning the mortgage contingency, I would have indicated that my clients required same as they certainly needed a mortgage to consummate the purchase of the property in question.

*402 I am further led to believe that even if plaintiffs did sign the purported mortgage waiver in early February, 1989, they either did not understand the content and effect of same, or, in fact signed a document that was subsequently altered or fraudulently executed due to the fact that I received a letter from plaintiff, Robert Freedman, in mid-February 1989 concerning his quest for a mortgage loan.
The supporting certification of defendant's president relies on the waiver, but gives no explanation of the reasons or circumstances surrounding its execution.
Based on the foregoing, the trial judge concluded that beyond any genuine disputed fact, the waiver was effective and valid.[2] Consequently, he concluded that there was no mortgage commitment condition and hence plaintiffs were not entitled to declare the contract void by reason of their inability to obtain financing. He granted defendant's motion and dismissed the complaint.
We view the matter differently. First, although not explicitly demonstrated, it appears clear that the waiver was prepared by the broker. Indeed the judge so assumed, noting that the waiver "was something that the parties, that is, the two Freedmans and the realtor ... worked out themselves." We regard that assumption as valid. First, plaintiffs' lawyer denied having prepared it. Defendant's lawyer could not ethically have procured plaintiffs' execution without participation by their lawyer, and there is nothing to suggest that any such improper conduct occurred. Moreover, one Weichert broker witnessed the execution and another transmitted the document. We are therefore satisfied, and it has never been disputed by any party, that the waiver was in fact prepared by the broker, *403 who attended to its execution without any notice to counsel until it was fait accompli. We regard these circumstances as fatal to its enforceability.
We have no doubt that absent later ratification by an independent act, an initial broker's contract omitting the required provisions is voidable by either party. That is indeed not only the import of the required language but also the only conclusion consistent with the public policy underlying the court-approved settlement in New Jersey Bar Ass'n, supra. As Justice Sullivan, then sitting in the Chancery Division, made perfectly plain, the point of the Bar Association's lawsuit to prohibit broker preparation of contract documents and of the order approving the settlement by which it was concluded was not primarily the protection of the bar, but rather the protection of the public. The order was predicated on the recognition that a party to a residential real estate sales contract must understand from the outset that the broker is neither by training, nor motivation, nor professional undertaking the advocate or counsel for the contracting party, and especially not for the buyer since the broker's agency relationship is ordinarily only with the seller. As Judge Cohen noted in Trenta v. Gay, 191 N.J. Super. 617, 620, 468 A.2d 737 (Ch.Div. 1983), there is basis in reality for the lawyers' belief:
... that some brokers are inclined to push the parties toward deals that may be against their interests. They believe that lawyers offer valuable advice to people entering real estate transactions. They are frustrated by the limitations on the role they can play if their clients appear for the first time with binding agreements in their hands.
Thus if the broker's contract fails, as required, to notify the executing party that it is a legally binding document which may be cancelled by his attorney after review, that party is deprived of the benefits intended to be vouchsafed him by the settlement order, namely the legal advice as well as the "emotional support, financial guidance and common sense" available by "discussion and advice from a trusted counsellor." Id. at 621, 468 A.2d 737. And see Levison v. Weintraub, 215 N.J. Super. 273, 276-277, 521 A.2d 909 (App.Div.), certif. denied, 107 N.J. 650, *404 527 A.2d 470 (1987), noting the essential purpose of consumer protection for which the attorney review clause was designed. See also Zapanta v. Isoldi, 212 N.J. Super. 678, 692, 515 A.2d 1298 (Ch.Div. 1986), overruled on other grounds by Levison, supra, 215 N.J. Super. at 277, 521 A.2d 909, and noting that the settlement order is designed to protect the public from "improvident terms" inserted in broker contracts by providing the contracting parties with "clear notice" of the "availability and advantages" of attorney review.
It is perfectly plain to us that material modification of the terms of the contract stands on no different footing from the contract itself. A party, and particularly an already represented party, has the same need to understand the import of the modification, its burdens and benefits, and his available legal and business options as he did with respect to the original contract. It would completely frustrate the salutary protections intended to be afforded by the settlement order if a party were to be deprived of his lawyer's counsel when critical changes to the contract are proposed.
We do not know how common it is for a broker to continue to prepare contract documents after both parties to the transaction are represented by counsel. We would indeed have assumed that in that case, normal practice would dictate document preparation by one of the attorneys after consultation among all attorneys and clients. We would also assume that in view of the nature of the existing professional relationship between lawyer and client, the broker would, at the least, be obligated to submit the proposed document to the lawyer for review prior to its execution. But none of these customary procedures apparently obtained here. Insofar as we are able to reconstruct the events, the broker, knowing that the buyers were represented and by whom, nevertheless procured their waiver of a critical contractual protection without benefit of counsel, with no apparent advantage to them, for no stated reason, and without affording them the notice which would have alerted them of the need to discuss this consequential *405 move with their lawyer. It is obvious to us that such a discussion might well have led either to their never signing the document at all or to a less drastic way of accommodating the parties' mutual interests  perhaps by a mortgage contingency extension or, if that were the concern, a modification of the contractual provision respecting the triggering of actual construction.
Nor is it enough that the broker sent the waiver to the buyers' attorney more than a week after they executed it. The document was then transmitted to the attorney not for his review but simply for his information. The fact that the attorney received it and placed it in his file is patently no substitute for an advisory, addressed to the party, which is intended first to send him to his attorney for advice and then to afford the attorney the opportunity of cancellation before the client is legally bound. None of that happened here. In sum, we regard the circumstances surrounding the waiver as vividly demonstrative of the precise problem the settlement order was intended to cure. We moreover conclude that vindication of the public interest sought to be protected and advanced by the settlement order demands that this broker-prepared mortgage contingency waiver be deemed void at the buyers' option.
Voiding of the waiver does not, however, dispose of this controversy. There are obvious questions remaining respecting the original mortgage contingency provision and whether plaintiffs were entitled, as late as April 1989, to rely on that provision in rescinding the contract. To begin with, we are at a loss to understand why the superseding contract had a mortgage commitment deadline which preceded the date of its execution. Was this actually intended? Was it merely an oversight? Had the parties agreed, as plaintiffs assert, that they would have an additional reasonable time in which to obtain the mortgage? Were there any other agreements or understandings between the parties respecting the mortgage and the commitment date? Had plaintiffs made prompt and *406 good faith efforts to obtain a mortgage? Was their inability to do so bona fide? These are the issues which must now be tried. See, e.g., Freidman v. Chopra, 220 N.J. Super. 546, 533 A.2d 48 (App.Div. 1987), certif. denied, 110 N.J. 164, 540 A.2d 165 (1988); Schultz v. Topakyan, 193 N.J. Super. 550, 475 A.2d 91 (App. Div. 1984); Asplund v. Marjohn Corp., 66 N.J. Super. 255, 168 A.2d 844 (App.Div.), certif. denied, 35 N.J. 61, 171 A.2d 147 (1961); Northeast Custom Homes, Inc. v. Howell, 230 N.J. Super. 296, 553 A.2d 387 (Law Div. 1988).
In sum, we hold that the contractual rights of the parties are to be determined in accordance with the superseding contract of January 18, 1989, without reference to the later executed mortgage contingency waiver. We remand to the trial court for construction, to the extent necessary, of the terms of the mortgage contingency provision of that contract and a determination, consistent with that construction, of plaintiffs' right to rescind the contract based on their alleged bona fide inability to obtain the required mortgage commitment.
The summary judgment appealed from is reversed. We remand to the trial court for further proceedings consistent with this opinion.
NOTES
[1] The record does not indicate whether the original contract had been prepared by defendant's attorney, defendant itself, or the broker. Although it contained an attorney review clause, the clause was not in prescribed form. Nor did it bear the prescribed legend at its head. In any event the contract was reviewed, its provisions further negotiated, and no issue is raised respecting either its validity or the validity of the superseding contract executed in January 1989 after plaintiffs were married. We therefore do not consider any issue related thereto.
[2] We note that the judge also appeared to rely on facts outside the record. He asked plaintiffs' attorney how much education they had had and what work they did. Upon being informed that they had completed high school and that plaintiff Robert Freedman was a financial planner, the judge stated his assumption that he, Freedman, must surely have understood the import of the document. This was obviously not a proper way to proceed. The assumption itself is not necessarily valid. Credibility questions were raised which cannot be decided on a summary judgment motion.