247 N.J. Super. 518 (1991)
589 A.2d 1049
MARILYN CALVERT, PLAINTIFF-APPELLANT-CROSS-RESPONDENT,
v.
K. HOVNANIAN AT GALLOWAY IV, INC. AND MICHAEL O'NEAL BEDSON, DEFENDANTS-RESPONDENTS-CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 1991.
Decided May 1, 1991.
*520 Before Judges KING, LONG and R.S. COHEN.
Jefferson Mott argued the cause for appellant (Joel A. Mott, III, attorney).
Nelson C. Johnson argued the cause for respondent (Dilworth, Paxson, Kalish & Kauffman, attorneys; Nelson C. Johnson and Barbara Sardella, on the brief).
The opinion of the court was delivered by LONG, J.A.D.
The questions presented here are whether the requirement of an attorney review clause which was embodied in the settlement *521 approved in New Jersey State Bar Ass'n v. New Jersey Ass'n of Realtor Bds., 186 N.J. Super. 391, 395-98, 452 A.2d 1323 (Ch.Div. 1982), aff'd as modified, 93 N.J. 470, 461 A.2d 1112 and 94 N.J. 449, 467 A.2d 577 (1983), is satisfied by a broker-prepared contract which includes the seven-day cancellation clause provided in the Planned Real Estate Development Full Disclosure Act (PREDFDA), N.J.S.A. 45:22A-21 to -42, and if not, what remedy is available to the purchaser aggrieved by the omission.

I
Landarama, Inc. is a wholly-owned subsidiary of defendant K. Hovnanian Developments of New Jersey, Inc. (Hovnanian) and handles the sales of all condominium projects developed by other wholly-owned subsidiaries of Hovnanian including the condominium project known as Society Hill at Galloway III (the development).
In August 1988, plaintiff Marilyn Calvert, who was a widow in her sixties with a high school education, inexperienced in real estate transactions, visited the sales office at the development. She was shown various models of condominiums by defendant Michael O'Neal Bedson, who is a licensed real estate salesperson and is paid a percentage commission based on the purchase amount of each unit he "sells" and of the options chosen by the purchaser.
In September 1988, a model became available which Mrs. Calvert liked. She gave Bedson a $250 non-binding deposit to reserve the unit and executed a Summary of Basic Provisions. This document described the property, price, deposit schedule, listed the buyer's name and address and indicated that no mortgage or mortgage contingency was involved in the deal. At this time Mrs. Calvert was given the following documents by Bedson for her review and/or execution: (1) a procedural Letter of Instruction; (2) a transmittal letter; (3) a Seven-Day Non-Binding Deposit Agreement; (4) a public offering statement as *522 required by PREDFDA which provided information concerning the property; and (5) a Terms and Conditions Purchase Agreement. According to the Summary of Basic Provisions, that document and the Terms and Conditions Purchase Agreement constituted the "Purchase Agreement." At the time the deposit was given, Mrs. Calvert signed the non-binding deposit form and a copy of the public offering statement. By executing the non-binding deposit form and paying the deposit fee, she reserved the unit for seven days with no obligation to complete the transaction.
Hovnanian pre-fixed the terms (such as sales price, etc.) of the Purchase Agreement, which was produced at the sales office via a computer. Bedson inserted Mrs. Calvert's name and address, and identified the unit she had reserved. On September 17, 1988, Mrs. Calvert tendered an additional deposit of $6,125, for a total deposit of $6,375, and executed the Terms and Conditions Purchase Agreement. On October 18, 1988, a Hovnanian representative executed the Purchase Agreement and the Summary of Basic Provisions and thereafter returned the executed documents to Mrs. Calvert on November 9, 1988.
Because Mrs. Calvert wanted certain options added to the basic unit, an Amendment to the Purchase Agreement and "decorator's selections, options, and upgrades" form were prepared by Bedson and executed by both parties on November 2, 1988. The Amendment to the Purchase Agreement specifically provided that a mortgage contingency clause was not applicable.
The Purchase Agreement contained the following "notice to purchasers" in compliance with PREDFDA:
YOU HAVE THE RIGHT TO CANCEL A CONTRACT OR AGREEMENT BY SENDING OR DELIVERING WRITTEN NOTICE OF CANCELLATION TO THE DEVELOPER BY MIDNIGHT OF THE SEVENTH CALENDAR DAY FOLLOWING THE DAY ON WHICH IT IS EXECUTED. SUCH CANCELLATION IS WITHOUT PENALTY AND ALL MONIES SHALL BE PROMPTLY REFUNDED IN THEIR ENTIRETY.
*523 In addition, the public offering statement required by PREDFDA contained the following "notice to purchasers" on its cover page:
NOTICE TO THE PURCHASER: YOU HAVE THE RIGHT TO CANCEL ANY CONTRACT OR AGREEMENT FOR THE PURCHASE OF ANY LOT, PARCEL, UNIT OR INTEREST IN THIS DEVELOPMENT, WITHOUT CAUSE, BY SENDING OR DELIVERING WRITTEN NOTICE OF CANCELLATION TO THE DEVELOPER OR HIS AGENT BY MIDNIGHT OF THE SEVENTH CALENDAR DAY FOLLOWING THE DAY ON WHICH THE CONTRACT OR AGREEMENT IS EXECUTED. SUCH CANCELLATION IS WITHOUT PENALTY AND ALL MONIES SHALL BE PROMPTLY REFUNDED.
This notice was again repeated in the first page of the foreword of the public offering statement, together with the following admonitions:
Because of the complexity and interdependence of those legal documents, all of the developer's sales and other representatives are prohibited from changing any of the terms and conditions hereof or attempting to interpret their legal effect.
You are urged to consult your own counsel in connection with a review of these documents. The developer's counsel, in turn, will be available to discuss any matter that your counsel may wish to discuss.
Because Mrs. Calvert received the executed Purchase Agreement and Summary of Basic Provisions on November 9, 1988, she had until November 16, 1988 to cancel the agreement per the above-quoted language.
From the outset, Mrs. Calvert had intended to sell her house in order to pay for the new condo. When she was unable to do so, on March 24, 1989, she obtained an attorney. The attorney wrote to Hovnanian on that date and declared the Purchase Agreement null and void because it lacked the attorney review clause and because he did not approve of its contents. He requested a return of Mrs. Calvert's deposit. Hovnanian replied by letter dated April 4, 1989 that closing on the property would be conducted on April 18, 1989; if Mrs. Calvert was not present at that time, it would retain the deposit and immediately release the property for resale.
Mrs. Calvert did not appear at the closing, but filed a complaint on April 10, 1989, before the date set for closing, seeking *524 to have the contract declared void because of the absence of the attorney review clause and also seeking the return of her deposit.
Mrs. Calvert testified during her deposition that her husband had handled all prior real estate transactions for the couple, and that she had no experience in such matters. Further, although she needed to sell her house to pay for the condominium, she had no idea that there was a risk she might not be able to do so and thus she never considered making the purchase of the condominium contingent on her selling her home in Somers Point. She was unable to refinance her house in order to buy the condominium while the house was still for sale, or to obtain a mortgage to finance the purchase of the condominium. In addition, Mrs. Calvert stated that she did not feel at the time she needed an attorney, despite the seven-day cancellation language required by PREDFDA which appeared in the documents as noted above, because the forms were all standard. In fact, she said that she did not even read the language in the public offering statement urging her to consult an attorney, but asked defendant Bedson if an attorney would be necessary. Her deposition testimony indicates inferentially that Bedson replied negatively.
Following a December 15, 1989 hearing on cross-motions for summary judgment, the trial judge held that Bedson's filling in of the preprinted form constituted the preparation of a contract. However, the judge went on to characterize this transaction as being "in-house." That is, a licensed on-site broker was employed on a commission basis directly by the developer. Based on the "in-house" nature of the arrangement between Bedson and Hovnanian, the judge ruled that the attorney review clause was inapplicable and thus granted summary judgment to defendants. In addition, the judge stated that Mrs. Calvert's rights were adequately protected by the PREDFDA language. Mrs. Calvert appeals. Hovnanian cross-appeals on the limited issue of whether Bedson "prepared" the *525 contract.[1] We hold that Bedson prepared the contract; that the "in-house" nature of the transaction is irrelevant to the applicability of State Bar Ass'n; that the PREDFDA language does not meet the requirements of State Bar Ass'n; that the Plain Language Law, N.J.S.A. 56:12-1 to -13, does not justify the omission, and that the contract is void at the option of Mrs. Calvert.

II
The attorney review clause is rooted in the decision in State v. Bander, 56 N.J. 196, 265 A.2d 671 (1970), in which defendant, a real estate broker, prepared a real estate contract. The case came to the Supreme Court as a result of its constitutional authority over the practice of law. N.J. Const. of 1947, art. IV, § 2, par. 3. The Supreme Court did not reach the question of whether defendant's action constituted the unauthorized practice of law, but suggested that a suit for an injunction against the challenged acts be undertaken. Bander, supra, 56 N.J. at 202, 265 A.2d 671. Acting on that suggestion, the New Jersey State Bar Association filed suit against licensed realtors as a class, seeking a ruling that preparation of real estate sale contracts by realtors constituted the unauthorized practice of law. State Bar Ass'n, supra, 186 N.J. Super. 391, 452 A.2d 1323. After several days of trial before the Chancery Division, a settlement was reached whereby it was agreed that realtors could prepare certain real estate contracts and leases, provided that an attorney review clause was inserted in such contracts. The settlement was to become effective upon approval by the Supreme Court.
The Supreme Court considered and ultimately approved the settlement, with minor modifications. State Bar Ass'n, supra, *526 93 N.J. at 475-77, 461 A.2d 1112. Essentially, the approved settlement required that every contract for residential real property containing one to four dwelling units or single-family lots must contain conspicuously the following language at the top of the first page:
THIS IS A LEGALLY BINDING CONTRACT THAT WILL BECOME FINAL WITHIN THREE BUSINESS DAYS. DURING THIS PERIOD YOU MAY CHOOSE TO CONSULT AN ATTORNEY WHO CAN REVIEW AND CANCEL THE CONTRACT. SEE SECTION ON ATTORNEY REVIEW FOR DETAILS.
The contract must also contain the following language:
ATTORNEY REVIEW:
1. Study by attorney
The Buyer or the Seller may choose to have an attorney study this contract. If an attorney is consulted, the attorney must complete his or her review of the contract within a three-day period. This contract will be legally binding at the end of this three-day period unless an attorney for the Buyer or the Seller reviews and disapproves of the contract.
2. Counting the time
You count the three days from the date of delivery of the signed contract to the Buyer and the Seller. You do not count Saturdays, Sundays or legal holidays. The Buyer and the Seller may agree in writing to extend the three-day period for attorney review.
3. Notice of disapproval
If an attorney for the Buyer or the Seller reviews and disapproves of this contract, the attorney must notify the Broker(s) and the other party named in this contract within the three-day period. Otherwise this contract will be legally binding as written. The attorney must send the notice of disapproval to the Broker(s) by certified mail, by telegram, or by delivering it personally. The telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery to the Broker's office. The attorney should also inform the Broker(s) of any suggested revisions in the contract that would make it satisfactory.
(This language was refined in specifics unrelated to this case in State Bar Ass'n, supra, 94 N.J. 449, 467 A.2d 577).
The attorney review clause has been interpreted as providing each party with a three-working-day period within which the contract may be disapproved at the unfettered discretion of a party's attorney. Denesevich v. Moran, 211 N.J. Super. 554, 556, 512 A.2d 505 (App.Div. 1986). Thus, it is intended to provide each party's attorney with a reasonable amount of *527 time within which to review the contract in order to protect that attorney's client. Indoe v. Dwyer, 176 N.J. Super. 594, 602, 424 A.2d 456 (Law Div. 1980). In Levison v. Weintraub, 215 N.J. Super. 273, 278, 521 A.2d 909 (App.Div.) (quoting Trenta v. Gay, 191 N.J. Super. 617, 621-22, 468 A.2d 737 (Ch.Div. 1983)), certif. denied, 107 N.J. 650, 527 A.2d 470 (1987), we underscored the importance of obtaining attorney review of real estate contracts:
Attorneys offer advice on a limitless range of matters. Clients rely on them not only for legal advice but also for emotional support, financial guidance and common sense. They do not often come to their attorneys with their deals all made, save only the limited contributions of the scrivener. For those reasons, there is nothing surprising about a contract provision that effectively creates a timeout period for discussion and advice from a trusted counselor. That advice can be on details or on price and, to be effective, has to be uncontrolled. Plaintiffs fear price was the problem here and believe they were simply outbid by a latecoming buyer. That may be so. If it is, it is a possibility contemplated and legitimated by the attorney review clause.
As noted in Indoe, the complexity of real estate transactions requires review by a trained attorney representing each side. 176 N.J. Super. at 602, 424 A.2d 456. Further, the contract is the critical document in such a transaction and it is this document in particular that attorneys should either prepare or review. Id.
Most recently in Freedman v. Clonmel Construction Corporation, 246 N.J. Super. 397, 587 A.2d 1291 (App.Div. 1991), we held that the requirement of inclusion of the attorney review language applies not only to the initial real estate contract but to any broker-prepared document materially modifying the contract. In Freedman, the document was an after-prepared waiver of mortgage contingency. The trial judge held the waiver to be valid notwithstanding the absence of the attorney review language and the absence of actual attorney review within the three-day period. Writing for the reversing court, Judge Pressler stated:
We have no doubt that absent later ratification by an independent act, an initial broker's contract omitting the required provisions is voidable by either party. That is indeed not only the import of the required language but also the only conclusion consistent with the public policy underlying the court-approved *528 settlement in New Jersey Bar Ass'n, supra. As Justice Sullivan, then sitting in the Law Division, made perfectly plain, the point of the Bar Ass'n's lawsuit to prohibit broker preparation of contract documents and of the order approving the settlement by which it was concluded was not primarily the protection of the bar, but rather the protection of the public. The order was predicated on the recognition that a party to a residential real estate sales contract must understand from the outset that the broker is neither by training, nor motivation, nor professional undertaking the advocate or counsel for the contracting party, and especially not for the buyer since the broker's agency relationship is ordinarily only with the seller. As Judge Cohen noted in Trenta v. Gay, 191 N.J. Super. 617, 620 [468 A.2d 737] (Ch.Div. 1983), there is basis in reality for the lawyers' belief
that some brokers are inclined to push the parties toward deals that may be against their interests. They believe that lawyers offer valuable advice to people entering real estate transactions. They are frustrated by the limitations on the role they can play if their clients appear for the first time with binding agreements in their hands.
Thus if the broker's contract fails, as required, to notify the executing party that it is a legally binding document which may be cancelled by his attorney after review, that party is deprived of the benefits intended to be vouchsafed him by the settlement order, namely the legal advice as well as the "emotional support, financial guidance and common sense" available by "discussion and advice from a trusted counsellor." Id. at 621 [468 A.2d 737]. And see Levison v. Weintraub, 215 N.J. Super. 273, 276-77 [521 A.2d 909] (App.Div.), certif. denied, 107 N.J. 650 [527 A.2d 470] (1987), noting the essential purpose of consumer protection for which the attorney review clause was designed. See also Zapanta v. Isoldi, 212 N.J. Super. 678, 692 [515 A.2d 1298] (Ch.Div. 1986), overruled on other grounds by Levison, supra, [215 N.J. Super.] at 277 [521 A.2d 909], and noting that the settlement order is designed to protect the public from "improvident terms" inserted in broker contracts by providing the contracting parties with "clear notice" of the "availability and advantages" of attorney review.
It is perfectly plain to us that material modification of the terms of the contract stands on no different footing from the contract itself. A party, and particularly an already represented party, has the same need to understand the import of the modification, its burdens and benefits, and his available legal and business options as he did with respect to the original contract. It would completely frustrate the salutary protections intended to be afforded by the settlement order if a party were to be deprived of his lawyer's counsel when critical changes to the contract are proposed.
Id., 246 N.J. Super. at 403-404, 587 A.2d 1291.
This is the backdrop on which the facts of this case need be evaluated.
We begin with defendant's contention that the contract was not "originally prepared" by Bedson, and thus is outside *529 the scope of the settlement approved by the Supreme Court. State Bar Ass'n indicates specifically that absent the mandated inclusions, "all real estate brokers and salesmen licensed by the New Jersey Real Estate Commission are hereby permanently enjoined and restrained from drafting, filling in blanks or preparing contracts for the sale of residential real estate...." 93 N.J. at 481, 461 A.2d 1112 (emphasis added). See also New Jersey State Bar Ass'n v. Northern New Jersey Mortgage Associates, 32 N.J. 430, 444, 161 A.2d 257 (1960) where the Supreme Court held that filling in and completion of legal forms constitutes the practice of law. Clearly, filling in the blanks on a form so as to express the agreement of parties to a real estate contract and to define their legal rights and obligations subjects the document to the requirements of State Bar Ass'n.
Here, Bedson filled in blanks in the Purchase Agreement related to the identity of the buyer, the amount of the purchase price, and then negotiated and added the identity and cost of options selected by plaintiff to a pre-drafted amendment to the Purchase Agreement. In preparing the Amendment to the Purchase Agreement, Bedson indicated that the standard mortgage contingency clause in the Amendment did not apply. In essence, Bedson's fill-ins on the prepared forms set forth the legal rights and obligations of the parties and changed the blank forms into a contract. Thus, the trial judge correctly concluded that Bedson "prepared" the agreement with Calvert and was subject to the State Bar Ass'n rules.
The trial judge also ruled that the agreement did not require the attorney review clause due to the "in-house" nature of the transaction. However, the Supreme Court in State Bar Ass'n did not indicate that an exception to the attorney review clause requirement exists for "in-house" transactions. Rather, the consent judgment approved by the Supreme Court specifically noted that every such contract must contain the attorney review clause. State Bar Ass'n, supra, 93 N.J. at 475, 461 *530 A.2d 1112. If an exception was intended, it would have been expressed. We frankly see no policy grounds for such an exception or for the distinction here advanced. Indeed, we view defendant's suggestion as counter to the salutary intentions of State Bar Ass'n. In any event, it is for the Supreme Court to modify State Bar Ass'n, if it sees fit. Thus, the trial judge erred in his conclusion that the "in-house" nature of this transaction rendered State Bar Ass'n inapplicable.
He also erred in determining that the PREDFDA language passed muster. PREDFDA provides that any contract for the sale of real estate in a planned real estate development may be cancelled without cause by the purchaser within seven days following execution of the agreement. N.J.S.A. 45:22A-26. The purpose of the seven-day cancellation clause, as noted in the Senate, State Government, Federal and Interstate Relations and Veterans Affairs Committee Statement accompanying the bill, was to provide a period in which a prospective purchaser could cancel a real estate contract within a certain period of time without cause. There is no mention in the committee statement or in the legislation itself of encouraging attorney review of such contracts; the sole focus appears to be to grant the purchaser (but not the seller) a cooling-off period to reconsider the purchase within seven days after he or she executes the contract, and to cancel for any reason within that time period. N.J.S.A. 45:22A-26.
The attorney review clause is much more than a buyers' cooling-off period as provided by PREDFDA. It is strong encouragement for the party to obtain needed legal advice as well as the "emotional support, financial guidance and common sense" from a "trusted counsellor." Trenta v. Gay, supra, 191 N.J. Super. at 621, 468 A.2d 737.
Here, PREDFDA language does appear as required in both the public offering statement and just above the signature line of the Purchase Agreement. Further, the first page of the foreword to the public offering statement and the letter of *531 transmittal to Mrs. Calvert contain language suggesting that Mrs. Calvert seek counsel to review documents.
However, there is no language in the Purchase Agreement itself suggesting that plaintiff obtain legal advice regarding the transaction, despite the fact that the contract is the key document fixing the duties and obligations of the parties in a real estate transaction. See Indoe, supra, 176 N.J. Super. at 602 ("[A] contract for the purchase and sale of a residence determines the rights and responsibilities of the parties as to the entire transaction and is of such importance in this respect as to require preparation or, in the least, preliminary review by an attorney."). Moreover, the Supreme Court, in State Bar Ass'n, supra, 93 N.J. at 475-76, 461 A.2d 1112, required that the attorney review clause appear in the contract; here, language suggesting that plaintiff seek legal counsel to review the documents does not appear in the critical document, the contract, but in several other documents. Because the PREDFDA language does not indicate that the purchaser should obtain legal review of the real estate contract, but only provides a seven-day cancellation period, and because language conveying to plaintiff the importance of obtaining legal counsel was not in the Purchase Agreement itself, but appeared in several other complicated documents, we are satisfied that facially the PREDFDA language does not meet the aims sought to be achieved by State Bar Ass'n.
Nor are we persuaded by Hovnanian that there was no way to include the attorney review clause in the contract along with the PREDFDA language consonant with the Plain Language Law. That law requires that consumer contracts, such as the Purchase Agreement in question here, see N.J.S.A. 56:12-1, must be written in a simple, clear, understandable and easily readable way. N.J.S.A. 56:12-2. Indeed, the Supreme Court modified the consent agreement in State Bar Ass'n, supra, in order to insure that the attorney review clause complied with the Plain Language Law. State Bar Ass'n, supra, 93 N.J. at *532 475, 461 A.2d 1112. This law also authorizes the Attorney General to render opinions on whether given language in a consumer contract violates the act, N.J.S.A. 56:12-8, and provides guidelines upon which the Attorney General can rely in issuing such an opinion, N.J.S.A. 56:12-10.
It is true that the language of the two clauses appears to present a conflict. The attorney review clause indicates that within the three-day period either party may consult an attorney who can review and cancel the contract. Further, the clause, which appears at the top of the first page of any applicable real estate contract, refers the reader to the attorney review sections required in the body of the contract, which note, in pertinent part, that the contract will be binding after a three-day period. The required PREDFDA language indicates that the purchaser has the right to cancel within seven days. Such cancellation rights are not afforded the seller. Thus, with respect to the purchaser only, confusion could arise as to whether he or she has three or seven days within which to cancel a contract.
However, there are also differences in the language. First, as noted above, PREDFDA cancellation rights are only granted to the purchaser, and not to the seller, whereas the attorney review clause applies to both parties to the transaction. Second, the language of the attorney review clause seeks to encourage the parties to the contract to obtain legal counsel, who is entitled to cancel the contract within the three-day period. The PREDFDA language, on the other hand, does not discuss attorney review at all, but simply notifies the purchaser that he or she can cancel the contract without cause within seven days. Given the differing foci of the two clauses, omission of the attorney review clause was not an option open to Hovnanian. A methodology for resolving a plain language issue was available. Hovnanian could, for example, have presented this case to the Attorney General under N.J.S.A. 56:12-8. It chose not to do so. It also could have included the attorney review language in the contract along with the *533 PREDFDA language and extended the attorney review period to seven days thus exceeding the protection mandated by the Supreme Court and at the same time, eliminating any conflict.
Alternatively, this matter could have been brought to the Supreme Court under its power to regulate the practice of law for a determination as to how the attorney review clause should be modified, if at all, in PREDFDA contracts to ensure compliance with the Plain Language Law. Instead, Hovnanian opted for the perilous course of eliminating the attorney review clause in the contract and thus violated State Bar Ass'n.

III
The final question is what remedy should apply. Here, in clear violation of State Bar Ass'n, Hovnanian omitted the attorney review clause from the contract. As a result, Mrs. Calvert entered into a real estate contract prepared by a broker without the benefit of legal counsel, resulting in a contract which did not contain a clause making the purchase of the condominium contingent on the sale of the Somers Point house, or a mortgage contingency clause, either of which would have protected her when her house could not be sold. Further, when she contacted her attorney on March 24, 1989 and requested his review of her real estate contract he immediately informed Hovnanian that he considered the contract void, because it lacked the attorney review clause and was otherwise unacceptable. Within six days of Hovnanian's refusal to alter the closing schedule, Mrs. Calvert filed her complaint. Given these facts, she acted to void the contract within a reasonable time after she discovered the grounds therefor. As in Freedman v. Clonmel Construction, supra, at 405, 587 A.2d 1291:
[W]e regard the circumstances surrounding the waiver as vividly demonstrative of the precise problem the settlement order was intended to cure. We moreover conclude that vindication of the public interest sought to be protected and advanced by the settlement order demands that this broker-prepared mortgage contingency waiver be deemed void at the buyers' option.
*534 Unlike Freedman, this case does not involve a prior contract including an attorney review clause thus requiring a determination of the parties' rights and obligations under the earlier document. Here, the contract was invalid and is void at the option of Mrs. Calvert. We thus reverse and remand for the entry of an appropriate judgment.
Reversed.
NOTES
[1] We are considering this issue notwithstanding the impropriety of Hovnanian's cross-appeal. Hovnanian was the successful litigant pursuant to the judgment. Appeals are taken only from a judgment or order. Heffner v. Jacobson, 100 N.J. 550, 553, 498 A.2d 766 (1985).