607 A.2d 156

MARILYNN CALVERT, PLAINTIFF–RESPONDENT, v. K. HOVNANIAN AT GALLOWAY, VI, INC. AND MICHAEL O'NEAL BEDSON, DEFENDANTS–APPELLANTS.

Argued January 7, 1992—Decided May 28, 1992.

38

*Arthur M. Greenbaum* argued the cause for appellants (*Greenbaum, Rowe, Smith, Ravin & Davis,* attorneys; *Arthur M. Greenbaum* and *Robert C. Schachter,* on the brief).

*Jefferson A. Mott* argued the cause for respondent (*Mott, Vernon and Mott,* attorneys).

The opinion of the Court was delivered by

GARIBALDI, J.

In this appeal we consider whether an "in-house" real-estate salesperson must insert the attorney-review clause approved by this Court in *New Jersey State Bar Ass'n v. New Jersey Association of Realtor Boards*, 93 *N.J.* 470, 461 *A.2d* 1112, *modified*, 94 *N.J.* 449, 467 *A.2d* 577 (1983) (*State Bar Ass'n*), into a contract that already contains a seven-day cancellation clause mandated by the Planned Real Estate Development Full Disclosure Act (PREDFDA), *N.J.S.A.* 45:22A–21 to – 42. We conclude that he or she must.

I

We examine a contract prepared by defendant Michael O'Neal Bedson, a licensed New Jersey real-estate salesperson who sells single-family homes on behalf of Landarama, Inc. (Landarama), a licensed broker. Landarama is a wholly-owned subsidiary of K. Hovnanian Developments of New Jersey, Inc. (Hovnanian) and handles the sales of all condominium complexes developed by other wholly-owned subsidiaries of Hovnanian, including Society Hill at Galloway III (Society Hill). Bedson works for Landarama full-time and receives commissions based on a percentage of the cost of each condominium he sells and of the options chosen by the purchaser.

In August 1988, plaintiff, Marilyn Calvert, a widow in her sixties, inexperienced in real-estate matters, visited the sales office at Society Hill. Bedson showed her various models of condominiums. On September 8, 1988, Calvert gave Bedson a $250 deposit to reserve a condominium. She also executed a "Summary of Basic Provisions." Bedson filled out that document with Calvert's name and address and with the name and number of the unit. Landarama's computer generated the remaining contractual provisions specifying when settlement would take place and when additional deposits would be due, and indicating that no mortgage or mortgage contingency was involved in the deal.

Bedson also gave Calvert other documents to review and execute, including a public-offering statement, as required by PREDFDA, and a "Terms and Conditions Purchase Agreement." The "Summary of Basic Provisions" and the "Terms and Conditions Purchase Agreement" constituted the Purchase Agreement.

On September 17, 1988, Calvert tendered an additional deposit of $6,125, for a total deposit of $6,375, and executed the Purchase Agreement. On October 18, 1988, a Hovnanian representative executed the Purchase Agreement and then returned it to Calvert on November 9, 1988, together with a cover letter that stated:

> Attached are two copies of the contract of sale, which have been executed by an officer of the company. This office represents the interest of K. Hovnanian at Galloway Six, Inc. You, of course, have the right to be represented by an attorney of your choice. And the fee for such representation is a matter to be decided between you and your attorney. If you elect to retain an attorney to represent your interest, please give them a copy of contract of sale.

Because Calvert wanted Hovnanian to add certain options to her condominium, on November 2, 1988, Bedson prepared, and both parties executed, an amendment to the Purchase Agreement. Like the Purchase Agreement, that amendment specifically provided that a mortgage-contingency clause was not applicable.

Society Hill is a "planned real estate development" registered under PREDFDA and therefore subject to its provisions and regulations. *See N.J.S.A.* 45:22A–21 to –42. PREDFDA was enacted to require full and fair disclosure in the sale of condominiums. It requires that developers submit detailed applications to register their condominium projects, and specifies what must be included in those applications. It also specifies what the developer must disclose in a public offering statement. Specifically, *N.J.S.A.* 45:22A–26b, as well as *N.J.A.C.* 5:26–6.2 and 6.3, mandate a seven-day "cooling off" period during which a prospective purchaser can cancel without cause any PREDFDA contract. Thus, Landarama's Purchase Agreement

contained the following "notice to purchaser" in compliance with PREDFDA:

YOU HAVE THE RIGHT TO CANCEL A CONTRACT OR AGREEMENT BY SENDING OR DELIVERING WRITTEN NOTICE OF CANCELLATION TO THE DEVELOPER BY MIDNIGHT OF THE SEVENTH CALENDAR DAY FOLLOWING THE DAY ON WHICH IT IS EXECUTED. SUCH CANCELLA-TION IS WITHOUT PENALTY AND ALL MONIES SHALL BE PROMPTLY REFUNDED IN THEIR ENTIRETY.

In addition, the public-offering statement required by PREDFDA contained a similar notice on its cover page:

NOTICE TO THE PURCHASER: YOU HAVE THE RIGHT TO CANCEL ANY CONTRACT OR AGREEMENT FOR THE PURCHASE OF ANY LOT, PARCEL, UNIT OR INTEREST IN THIS DEVELOPMENT, WITHOUT CAUSE, BY SENDING OR DELIVERING WRITTEN NOTICE OF CANCEL-LATION TO THE DEVELOPER OR HIS AGENT BY MIDNIGHT OF THE SEVENTH CALENDAR DAY FOLLOWING THE DAY ON WHICH THE CONTRACT OR AGREEMENT IS EXECUTED. SUCH CANCELLATION IS WITHOUT PENALTY AND ALL MONIES SHALL BE PROMPTLY RE-FUNDED.

That notice was again repeated on the first page of the foreword of the public-offering statement, together with the following admonitions:

Because of the complexity and interdependence of those legal documents, all of the developer's sales and other representatives are prohibited from changing any of the terms and conditions hereof or attempting to interpret their legal effect.

You are urged to consult your own counsel in connection with a review of these documents. The developer's counsel, in turn, will be available to discuss any matter that your counsel may wish to discuss.

Although the Purchase Agreement contained the required PREDFDA language, it did not contain the attorney-review clause that this Court approved in *State Bar Ass'n, supra,* 93 *N.J.* 470, 461 *A.*2d 1112, and ordered to appear in all real-estate contracts prepared by licensed brokers. In *State Bar Ass'n,* the Court permitted

[r]eal estate brokers and salespersons licensed by the New Jersey Real Estate Commission * * * to prepare contracts for the sale of residential real estate containing one-to-four dwelling units * * * PROVIDED that every such con-tract shall contain conspicuously at the top of the first page the following language:

This is a legally binding contract that will become final within three business days. During this period you may choose to consult an attorney who can review and cancel the contract. See section on attorney review for details.

[*Id.* at 475, 461 *A.*2d 1112.]

The contract must also contain the following language:

ATTORNEY REVIEW:

1. *Study by Attorney*

The Buyer or the Seller may choose to have an attorney study this contract. If an attorney is consulted, the attorney must complete his or her review of the contract within a three-day period. This contract will be legally binding at the end of this three-day period unless an attorney for the Buyer or the Seller reviews and disapproves of the contract.

2. *Counting the Time*

You count the three days from the date of delivery of the signed contract to the Buyer and the Seller. You do not count Saturdays, Sundays or legal holidays. The Buyer and the Seller may agree in writing to extend the three-day period for attorney review.

3. *Notice of Disapproval*

If an attorney for the Buyer or the Seller reviews and disapproves of this contract, the attorney must notify the Broker(s) and the other party named in this contract within the three-day period. Otherwise this contract will be legally binding as written. The attorney must send the notice of disapproval to the Broker(s) by certified mail, by telegram, or by delivering it personally. The telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery to the Broker's office. The attorney should also inform the Broker(s) of any suggested revisions in the contract that would make it satisfactory.

[*Id.* at 477, 461 *A.*2d 1112.]

Calvert did not consult an attorney when the parties executed the contract. In response to the closing fact sheet prepared by Hovnanian she wrote that she did not have counsel but that that circumstance could change as she hoped to close on the sale of her house in February 1989. At her deposition Calvert stated that she had not been aware that she needed an attorney because the contracts were standard forms. Additionally, she testified that she had asked Bedson if an attorney would be necessary. Although the parties disagree, the Appellate Division concluded that in her deposition testimony Calvert indicated inferentially that Bedson had told her she would not need an attorney. See 247 *N.J.Super.* 518, 524, 589 *A.*2d 1049.

Under PREDFDA Calvert had until November 16, 1988, to cancel the contract. Calvert had intended to sell her house in order to pay for the condominium; unable to do so and unable to obtain financing for the condominium, she consulted an attorney on March 24, 1989. The attorney wrote to Hovnanian that same day and declared the Purchase Agreement null and void because it lacked an attorney-review clause. He also asked Hovnanian to return Calvert's deposit, a request that Hovnanian refused. Calvert filed a complaint on April 10, 1989, before the date set for closing, asking the court to declare the contract void because of the absence of the attorney-review clause, and also seeking the return of her deposit.

The trial court recognized that because Bedson, a licensed real-estate salesperson, had been practicing law by filling out the contract, the attorney-review clause should have been in the contract. The court held, however, that *State Bar Ass'n* did not apply to Bedson because he worked directly for the seller-developer, Hovnanian, rather than for an agency. Moreover, the trial court stated that inclusion of the PREDFDA language in the contract gave Calvert more protection than the attorney-review clause. The trial court thus granted Bedson's and Hovnanian's motions for summary judgment.

The Appellate Division reversed, holding that Bedson's status as a full-time salesperson for Landarama did not preclude application of *State Bar Ass'n;* that the PREDFDA language did not satisfy *State Bar Ass'n*'s requirements; that the Plain Language Act, *N.J.S.A.* 56:12–2, –6, and –10, did not justify omitting the attorney-review clause; and that the contract was void at Calvert's option.

We granted certification, 126 *N.J.* 339, 598 *A.*2d 896 (1991).

## II

### A. *The History of the Attorney–Review Clause*

In *State Bar Ass'n,* this Court approved a settlement reached between the New Jersey Bar Association (Bar Association) and

the New Jersey Association of Realtor Boards (Association of Realtors). The settlement stemmed from *State v. Bander*, 56 *N.J.* 196, 265 *A.*2d 671 (1970). In *Bander*, a licensed real-estate broker who had negotiated a real-estate sale between a buyer and a seller was charged with the disorderly person offense of having unlawfully engaged in the practice of law, *N.J.S.A.* 2A:170–78. Bander had prepared a form purchase agreement and submitted it to the buyer and the seller for their signatures.

Although this Court held that Bander's conduct was not a disorderly-person offense under the statute, we reserved the question of whether the broker's acts constituted the unauthorized practice of law. We suggested that an answer might be obtained in a separate suit for injunction against the type of acts undertaken by the defendant or for a declaratory judgment. Acting on our suggestion, the Bar Association filed an action against licensed realtors as a class seeking a declaratory judgment and injunctive relief. The Bar Association sought a ruling that the preparation of contracts for the sale or lease of real estate by licensed real-estate brokers or salespersons amounted to the unauthorized practice of law.

The Bar Association and the Association of Realtors finally agreed to a settlement that permitted licensed realtors receiving commissions for the sale of residential real estate to prepare the contracts for those sales provided that each contract contain a clause making the contract subject to review by an attorney for the buyer or seller at either party's option within three business days after execution. The Chancery Division accepted the settlement and entered a consent judgment. See 186 *N.J.Super.* 391, 452 *A.*2d 1323 (1982).

Exercising our constitutional powers governing the practice of law, *N.J. Const.* art. VI, § 2, ¶ 3, the Court approved the consent judgment. 93 *N.J.* 470, 461 *A.*2d 1112. In so doing, we emphasized that the trial record supported the conclusion that the settlement would best serve the public interest. *Id.* at 473,

461 *A*.2d 1112. We noted that to the extent that there is an unavoidable overlap between the realty and the legal professions, the public's interest would be safeguarded through the settlement's attorney-review provisions and our continuing supervisory control. *Id.* at 474, 461 *A*.2d 1112. That safeguard is a necessary one.

> What is at stake is apparent. Brokers wish to be able to put together binding deals while the parties' momentum is in that direction. They fear that the doubts that afflict people entering substantial transactions may unravel perfectly good deals while the lawyers pick nits. Lawyers believe that some brokers are inclined to push the parties toward deals that may be against their interests. They believe that lawyers offer valuable advice to people entering real estate transactions. They are frustrated by the limitations on the role they can play if their clients appear for the first time with binding agreements in their hands.

[*Trenta v. Gay,* 191 *N.J.Super.* 617, 619–20, 468 *A*.2d 737 (Ch.Div.1983).] The *State Bar Ass'n* settlement thus represents a "sensible accommodation of the interests of both realtors and attorneys." *State Bar Ass'n, supra,* 186 *N.J.Super.* at 398, 452 *A*.2d 1323. Most importantly, what *State Bar Ass'n* sought to protect was not the private interest of lawyers but rather the public's right to be protected from inadequate information. Consulting an attorney helps a party to a real-estate transaction make choices that are in that party's best interests.

> Attorneys offer advice on a limitless range of matters. Clients rely on them not only for legal advice but also for emotional support, financial guidance and common sense. They do not often come to their attorneys with their deals all made, save only the limited contributions of the scrivener. For those reasons, there is nothing surprising about a contract provision that effectively creates a timeout period for discussion and advice from a trusted counsellor.
>
> [*Levinson v. Weintraub,* 215 *N.J.Super.* 273, 278, 521 *A*.2d 909 (App.Div.), *certif. denied,* 107 *N.J.* 650, 527 *A*.2d 470 (1987) (quoting *Trenta v. Gay, supra,* 191 *N.J.Super.* at 621–22, 468 *A*.2d 737).]

This Court approved the *State Bar Ass'n* settlement because we recognized, as the Appellate Division has noted,

> that a party to a residential real estate sales contract must understand from the outset that the broker is neither by training, nor motivation, nor professional undertaking the advocate or counsel for the contracting party, and especially not for the buyer since the broker's agency relationship is ordinarily only with the seller.
>
> [*Freedman v. Clonmel Constr. Corp.,* 246 *N.J.Super.* 397, 403, 587 *A*.2d 1291 (App.Div.1991).]

In deciding this case, we thus consider what result will best serve the public interest and comport with *State Bar Ass'n*.

## B. *Bedson was engaged in the unauthorized practice of law.*

■ We have long recognized that "[o]ftentimes the line between [the unauthorized practice of law] and permissible business and professional activities by non-lawyers is indistinct." *New Jersey State Bar Ass'n v. New Jersey Mortgage Assocs.*, 32 *N.J.* 430, 437, 161 *A.*2d 257 (1960). The *State Bar Ass'n* settlement disposed of the necessity to review specifically the work of each broker with regard to a real-estate contract. Whether a broker completes a real-estate contract by filling in the blanks of a form contract, or writes the entire contract, he or she is within the ambit of *State Bar Ass'n*. Hence, unless another exception applies, the broker must include the attorney-review clause in the contract. We agree with the lower courts that when Bedson, a licensed real-estate salesperson, filled in the blanks of Hovnanian's contract, he was engaged in the unauthorized practice of law. The question, therefore, is whether an exception exists to remove Bedson from the purview of *State Bar Ass'n*.

## C. *Bedson's status as an "in-house" salesperson.*

■ This Court's directive in *State Bar Ass'n* was very specific: a licensed broker who prepares a real-estate contract must set out the precise language of the attorney-review clause at the top of the contract's first page. However, we acknowledge that the "in-house" transaction presented in this case was not the factual situation presented in *State Bar Ass'n*.

The record in *State Bar Ass'n* indicated that the Bar Association was primarily concerned about the third-party broker who listed property and brought the seller and buyer together, thereby functioning as an intermediary. In such a situation, confusion may arise over whether the broker was acting to

further the interests of the seller, the buyer, both, or just his or her own. Indeed, many buyers think that the real-estate broker is representing them and protecting their interests. Bedson alleges that the situation in which the buyer is dealing directly with the seller or an employee of the seller does not implicate the same concerns. In such a case the buyer knows that the broker is representing and protecting the seller's interest only and that the buyer must protect his or her own interest.

Bedson asserts that Calvert could not have misunderstood whose interests he was acting to further because she knew he worked for Landarama and was not an independent middleman. But the facts do not support that assertion. Calvert was an unsophisticated buyer. Bedson's status as a full-time employee did not necessarily dispel Calvert's perception that he was somewhat neutral. The fact that Calvert asked Bedson whether she needed an attorney may show that she perceived Bedson as a neutral party to the transaction.

Even if Calvert knew that Bedson was working to further only his employer's interests, *State Bar Ass'n*'s directive would still apply because Bedson was a real-estate broker. Although Bedson's full-time job was to sell condominiums owned by Hovnanian, Bedson's salary consisted of commissions from sales of the condominiums. Those commissions provided Bedson with an incentive to sell a condominium to Calvert without regard to Calvert's best interests. He may therefore have been inclined to push her towards a deal that may have been against her interests.

> The realtor is interested in making the sale and earning his commission. It is natural for him to gain his customer's confidence and trust and to encourage the parties to sign the contract. It is also easy to assure the lay person that an attorney is not needed and that the seller or buyer should avoid an unnecessary cost.
>
> [*State Bar Ass'n, supra*, 93 *N.J.* at 484, 461 *A.*2d 1112 (Schreiber, J., dissenting).]

That Calvert would have benefitted from an attorney cannot be disputed. An attorney would have required the inclusion of a mortgage-contingency clause in the contract. An attorney-

review clause in the contract might have led Calvert to consult an attorney, whose job would have been to further Calvert's interests. Instead, Calvert was left to rely on Bedson, who acted only to further his own and his employer's interests.

We thus conclude that Bedson's status as an "in-house" salesman did not excuse his failure to include the attorney-review clause in Calvert's contract.

### D. *Presence of PREDFDA's cancellation clause.*

■ We reject the notion that the presence of PREDFDA's seven-day cancellation clause in the contract remedied the absence of *State Bar Ass'n*'s three-day attorney-review clause. We acknowledge, however, that *State Bar Ass'n* did not contemplate sales that are highly regulated by a statute whose purpose is to protect the buyer, a statute that specifically allows a prospective buyer seven days to cancel a real-estate contract for any reason. Commenting on whether residential leases involving a term of less than one year should be subject to attorney review, Justice Sullivan, temporarily assigned to the Chancery Division, stated in *State Bar Ass'n* that because "legislative enactments extend broad protections to lessees of residential property, so that the form of leases used by realtors as well as attorneys is largely standardized," public interest does not require that such leases contain the attorney-review clause. 186 *N.J.Super.* at 397, 452 *A.*2d 1323. The Senate, State Government, Federal and Interstate Relations and Veteran Affairs Committee Statement accompanying the PREDFDA bill noted that the cancellation clause purports to grant the purchaser a "cooling-off period." Nothing in the legislative history or the legislation itself indicates that the PREDFDA clause exists to encourage attorney review of such contracts. Nonetheless, PREDFDA does facilitate some of the same objectives and offers some of the same protections to the buyer: a cooling-off period from a high pressure salesperson.

The attorney-review clause, however, is more than a buyer's cooling-off period. Courts have long recognized that the complexity of real-estate contracts requires an attorney to review them. *Id.* at 403–04, 452 *A.*2d 1323. For many people the purchase of a home will be the most significant financial transaction they will ever undertake. The attorney-review clause functions as an advisory that is intended first to inform the parties that they can have an attorney review the document and then to afford the attorney the opportunity of cancellation before the client is legally bound. *Freedman, supra,* 186 *N.J.Super.* at 405, 452 *A.*2d 1323. For example, had Calvert discussed the contract with an attorney back in 1988, the attorney might have persuaded her not to sign the document or might have better accommodated her interests by suggesting the inclusion of a mortgage-contingency clause.

Because the contract here failed to notify Calvert that it was a document subject to attorney review, it deprived Calvert of the benefits intended to be granted by *State Bar Ass'n.* That deficiency persists even though language in several documents apart from the contract suggested that Calvert seek legal counsel. This Court in *State Bar Ass'n* ordered brokers to insert specific language at the top of the first page of the contract. The contract, not the public-offering statement nor any other ancillary documents, which laypersons often fail to read, is the critical document fixing the duties and rights of parties to a real-estate transaction.

We therefore hold that neither inclusion of the PREDFDA clause nor inclusion of non-conforming attorney-review language accomplishes *State Bar Ass'n*'s aim of protecting the public. PREDFDA requires strict conformance of parties' Public Offering Statements with its requirements. We acknowledge that the required wording of the seven-day PREDFDA clause and the required attorney-review clause present a conflict. When we approved *State Bar Ass'n,* we did not specifically address that conflict. As the conflict now unfolds, we

realize that the attorney-review clause must be clarified and adjusted for inclusion in PREDFDA contracts.

■ Therefore, to comport with requirements of the Plain Language Act, *N.J.S.A.* 56:12–2, –6, and –10, and pursuant to our constitutional powers governing the practice of law, *N.J. Const.* art. VI, § 2, ¶ 3, we order that contracts governed by PREDFDA and by *State Bar Ass'n* contain at the top of their first page the following modification of the required PREDFDA and attorney-review clauses:

Notice to the Purchaser:

YOU HAVE THE RIGHT TO CANCEL A CONTRACT OR AGREEMENT BY SENDING OR DELIVERING WRITTEN NOTICE OF CANCELLATION TO THE DEVELOPER BY MIDNIGHT OF THE SEVENTH CALENDAR DAY FOLLOWING THE DAY ON WHICH IT IS EXECUTED. SUCH CANCELLA-TION IS WITHOUT PENALTY AND ALL MONIES SHALL BE PROMPTLY REFUNDED IN THEIR ENTIRETY.

Notice to the Purchaser and Seller:

*WITHIN THE FIRST THREE BUSINESS DAYS OF THIS SEVEN–DAY PERIOD,* YOU MAY CHOOSE TO CONSULT AN ATTORNEY WHO CAN REVIEW AND CANCEL THE CONTRACT. SEE SECTION ON ATTORNEY REVIEW FOR DETAILS.

Under this modification, during the first three days after execution either the buyer's or seller's attorney may cancel the contract; during the next four days, only the buyer may cancel. The buyer will continue to have a full seven-day period in which to cancel the contract, regardless of whether he or she decides to consult an attorney. That modification comports with the purposes of both PREDFDA and *State Bar Ass'n.*

### III

■ We believe our holding today will best serve the public interest. We acknowledge that PREDFDA contracts are different from the contracts contemplated by *State Bar Ass'n.* They are highly regulated and afford the buyer the protection of the seven-day clause. Moreover, in the PREDFDA context, buyers usually go to the seller's sales office, located on the site of the development, where the seller's "in-house" representa-

tives show them the various condominium units. Because of the highly regulated nature of PREDFDA contracts and their protective buyer-consumer stance, and because of the conflicting time provisions, we understand why some sellers of units under PREDFDA contracts did not recognize that it was necessary that the attorney-review clause be in PREDFDA contracts. Our holding, therefore, that the attorney-review clause must be in PREDFDA contracts is prospective. However, as a matter of fundamental fairness, Calvert, whose efforts have resulted in the present clarification of *State Bar Ass'n* in PREDFDA cases, should benefit from our ruling in this case. *See Ramirez v. Amsted Indus.*, 86 *N.J.* 332, 357, 431 *A.*2d 811 (1981) (justice requires that persons whose claims are ultimately vindicated should be accorded relief). Thus, Calvert who acted promptly in filing her complaint and whose attorney immediately notified Hovnanian that he considered the contract void, shall be allowed to recover.

We affirm the judgment of the Appellate Division.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*OPPOSED*—None.