176 N.J. Super. 594 (1980)
424 A.2d 456
WILLIAM INDOE AND JANE INDOE, HUSBAND AND WIFE, PLAINTIFFS,
v.
JOHN DWYER AND CHRISTINE DWYER, HUSBAND AND WIFE, DEFENDANTS.
Superior Court of New Jersey, Law Division Somerset County.
Decided October 28, 1980.
*595 Michael C. Willner, for plaintiffs.
John A. Ridley, for defendants (Crummy, Del Deo, Dolan & Purcell, attorneys).
GAYNOR, J.S.C.
These cross-motions for summary judgment involve primarily the scope and effect of an attorney approval clause in a contract for the purchase of real estate. A secondary question relates to the binding effect upon a husband of such a contract executed solely by the wife where the only evidence of the husband's *596 interest was a provision in the contract providing that the deed was to be taken in both names. The primary issue presented is one of first impression and, in our opinion, must be resolved by an interpretation which permits an unlimited application of the attorney approval provision in the contract.
The facts of the case are not in dispute. In August 1976 plaintiffs listed their home in Bernardsville for sale at a price of $235,000. The property was not sold and it was listed again in 1977 at the same price. In August 1977 defendant Christine Dwyer was shown the house by a realtor in the absence of plaintiffs. She returned the following weekend with her husband, defendant John Dwyer, for a further inspection. No offer was made because defendants determined they were not interested in purchasing the property.
The following February Mrs. Dwyer inquired of the realtor as to whether plaintiffs' home was still available for purchase. Being informed that it was, but that an offer was then being considered, Mrs. Dwyer contacted her husband, who was on a business trip, and obtained his approval to submit a bid for the property. Accordingly, an offer of $225,000 was submitted orally by Mrs. Dwyer to the realtor. Later that day a realtor's printed form of contract for the sale and purchase of real estate was prepared by the realtor and presented to Mrs. Dwyer for signature. Believing the document to be merely a "bid" and that if acceptable to plaintiffs a purchase contract would thereafter be prepared, with the assistance of counsel and which would include terms acceptable to her husband and their attorney, Mrs. Dwyer signed the agreement. That evening the contract was presented to plaintiffs and executed by them.
When a copy of the fully executed document was returned later the same evening to Mrs. Dwyer, she was informed that, contrary to her expectations, plaintiffs did not intend to include the wall-to-wall carpeting in the sale. She thereupon called her attorney who instructed her to deliver a copy of the agreement to him the following morning. Two or three days later Mr. *597 Dwyer returned from his trip and conferred with their attorney concerning the contract. Following this conference defendants' attorney notified plaintiffs and the relator that, as attorney for defendants and in accordance with the provisions of the agreement, he was withholding his approval of the contract, and accordingly defendants would not proceed with the transaction. It was indicated that such disapproval was not based upon the price or financing terms. Pretrial discovery disclosed that such notification was given because the carpeting was not included in the sale and there was no specification in the agreement as to what personal property was indicated; the concern of defendants as to the close proximity of the swimming pool to the kitchen doors; the lack of provisions for potability and septic system tests; the shortness of the time period for satisfaction of the mortgage contingency; the inadequacy of the agreement in that Mr. Dwyer was not a signatory thereto, and other intangible considerations.
As indicated, the form utilized by the realtor was the "Standard Form of Real Estate Contract Adopted by the New Jersey Association of Realtor Boards for Use by New Jersey Realtors." The property was described by reference to the municipal tax map, and the purchase price, deposit and mortgage amount were handwritten insertions. The type of deed to be delivered was specified as "C. vs. Grantor," and the rate of interest on the mortgage to be obtained by the purchaser was stated as "prevailing rate." The agreement contained typed contingency clauses for the obtaining of a $75,000 conventional mortgage within 20 days and a termite inspection within 7 days. No provision was made for the inclusion in the sale of any personal property, except for gas and electric fixtures, etc., if any, as provided by the printed language of the form. The agreement also contained the following typewritten provision, which is being relied upon by defendants in opposing plaintiffs' motion for summary judgment for breach of the contract and in support of their motion for a dismissal of the complaint:

*598 This contract, except as to price and financing terms (if any), is contingent upon approval by the respective attorneys for purchasers and sellers within three (3) business days of the date hereof. The parties agree that such approval shall be deemed to have been given, and this contingency satisfied or waived, unless an objection or amendment or addition or other express statement withholding (sic) approval is made in writing within said three day period and delivered to the realtor or exchanged between the respective attorneys if they are known to each other.
Inasmuch as there does not exist any dispute concerning the material facts relating to the issues presented, it is appropriate that the motions of the parties be determined in a summary proceeding. R. 4:46-2; Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954).
It is plaintiffs' contention that defendants breached the contract by their failure to consummate the purchase in accordance with the agreement and that their attorney's notification of disapproval was not sufficient to excuse them from such performance. They assert that the "attorney approval clause" in the contract does not permit disapproval for unspecified reasons nor for any of the reasons as disclosed by defendants' answers to interrogatories. Plaintiffs argue that it would be unreasonable to conclude otherwise because of the specific language precluding an objection based upon price or financing terms. Additionally, they contend that a reasonable interpretation of the clause would not support a claim that the parties intended carte blanche disapproval rights after entering into what purports on its face to be a legally binding contract. Rather, a more logical conclusion is that the intention of the parties was to provide for a disapproval based upon legal deficiencies of the contract, which would be matters within the special expertise of an attorney.
On the other hand, defendants argue that there was no breach of contract as the inclusion of the subject clause in the agreement rendered its efficacy contingent upon the approval of either party's attorney and, so long as there is no showing of bad faith, the contract is not enforceable in the event of a disapproval by the stipulated counselor. Also, defendants suggest that *599 the reasonable expectation of a purchaser and seller of residential property is that such a provision, in a contract presented to them for execution by a real estate broker or salesperson, grants the right to obtain the unfettered approval or disapproval of their attorney.
While a clause providing for approval of the contract, within a specified time, by the attorney for either party, has not been judicially construed or applied, there appears to be varying interpretations ascribed to such a provision by professionals and others who are involved in real estate transactions. Thus, some may interpret it as meaning that the right of approval is restricted to negotiating the inclusion or exclusion of certain standard clauses, or the modification of included provisions, while others consider that the right is unlimited, thereby permitting the attorney to disapprove the contract for any reason. Under the latter interpretation there is no requirement that the disapproval be reasonable or even that the other contracting party be informed of the reasons for such disapproval. The effect of an unlimited right of disapproval is to place the parties in the same position they would have been if they had been able to consult with an attorney before signing the contract. See Horn, Residential Real Estate Law and Practice in New Jersey, § 1.1.
Although the effect of a general attorney approval clause in a contract for the purchase of real estate has not been judicially passed upon, a somewhat analogous issue has been presented in cases involving contractual provisions requiring that title to the subject property be satisfactory to the purchaser's attorney. Varying conclusions have been reached as to the manner in which the attorney may exercise such contractual right of approval or disapproval. One line of cases holds that any dissatisfaction with the title is to be tested by objective standards, the test being whether the title meets the standard of marketability, or whether the objections are reasonable. Beardslee v. Underhill, 37 N.J.L. 309 (Sup.Ct. 1875); Dean v. Williams, 56 Wash. 614, 106 P. 130 (Sup.Ct. 1910); Ogg v. Herman, 71 Mont. *600 10, 227 P. 476 (Sup.Ct. 1924); Williams v. Belling, 76 Cal. App. 610, 245 P. 455 (D.Ct.App. 1926). A different view is represented by the group of cases which consider that such provisions constitute the attorney as the sole judge of his dissatisfaction, subject only to the limitation that the decision be arrived at in good faith and not be arbitrary or capricious. Dixie Oil Co., Inc. v. McBurnett, 6 S.W.2d 83 (Tex.Comm.App. 1928); McMahon v. Spitzer, 29 Ohio App. 44, 163 N.E. 37 (Ohio Ct. App. 1928); Atkins v. Trowbridge, 162 A.D. 629, 148 N.Y.S. 181 (App.Div. 1914); Atlas Torpedo Co. v. U.S. Torpedo Co., 15 S.W.2d 150 (Tex.Civ. App. 1929); Sanger v. Slayden, 26 S.W. 847 (Tex.Civ.App. 1894); Flower v. Coe, 111 Neb. 296, 196 N.W. 139 (Sup.Ct. 1923). See, also, 47 A.L.R.2d 455, 77 Am.Jur.2d, Vendor and Purchaser, § 129.
The objective approach, i.e. where the dissatisfaction is tested by the standard of marketability, proceeds on the basis that a clause making the title subject to an attorney's approval is nothing more than an expression of that which is implied in every real estate purchase contract, namely, that the title shall be good and marketable. Accordingly, the purchaser is required to be satisfied with a title which is in fact marketable. Any claim of dissatisfaction must therefore be judged by what the law holds to be a merchantable title, and title cannot be rejected by a simple expression of dissatisfaction based on insufficient legal reason.
Those cases which apply what might be termed the subjective criterion consider that, by providing for an attorney's approval of title, the contracting parties have bargained for something more than a good or marketable title, namely, the attorney's acceptance of the title as satisfactory. It being competent for parties to so stipulate, the attorney's disapproval is conclusive if made in good faith, although in the opinion of others, including the court, the title may be good as a matter of law. Such an interpretation follows the apparent intention of the parties that the attorney be the sole and final arbiter as to the acceptability of the title. To conclude otherwise would deny to the purchaser *601 his right under the contract to the benefit of his attorney's judgment as to the sufficiency of the title. The rationale of this view was expressed in Sanger v. Slayden, supra, in the following terms:
Such a contract is permissible and legal, and, when deliberately executed, should be enforced. It is an express authority to Sanger to disaffirm when he is dissatisfied with the title. To only allow him to disaffirm when his dissatisfaction rests upon some valid and reasonable objection to the title is to practically deny him the exercise of this privilege expressly conferred by the contract, and denies him the right to the exercise of his judgment in the matter, and makes his right depend solely upon what others may think as to the merits of the title he has acquired. It substitutes their judgment for his. Others may be perfectly satisfied with the title, and think that a man of ordinary caution and prudence should be likewise, and that no reasonable ground for dissatisfaction exists. But, on the other hand, Sanger may, with equal good faith, be dissatisfied with the title for reasons that are satisfactory to him, and may think that a man of caution and prudence had grounds for his dissatisfaction. The true rule of construction of contracts of this character, and the one supported, we think, by reason and the weight of authority, is that the vendee may disaffirm the contract if he is dissatisfied, and his reasons or grounds of dissatisfaction may not be determined or inquired into by any one else.
While these rules are not controlling of the present case, it seems that where the contract permits disapproval thereof by either party's attorney as to its sufficiency or acceptability in general, and not only as to the state of the title, there is even more justification for considering that the right granted by such a provision should not be diluted or denied by requiring that the attorney's judgment be measured by some standard, other than good faith, or another's opinion. The purpose of such an attorney approval clause is to provide the purchaser or seller with the opportunity of obtaining legal advice with respect to the transaction, and its value lies in the fact that the contract may be canceled upon receiving such advice. Parties to a real estate transaction are entitled to the benefit of the judgment of a trusted counselor, and an approval contingency is designed to accord this right to those who, for some reason, enter into a purchase and sale agreement before reviewing the matter with their attorney.
Applying these observations to the present case compels the conclusion that the disapproval of the contract by defendants' *602 attorney effectively terminated the contract. The clause in question expressly made the agreement contingent upon the attorney's approval, except as to price and financing terms, and thereby bound the parties to abide the opinion of either party's attorney with respect to the efficacy of the contract, limited only by the requirement that the attorney act in good faith. The disapproval voiced by the defendants' attorney was an exercise of his judgment, and his reasons therefor were not subject to review or contradiction. The contract cannot be rewritten to qualify the clear and express language of the agreement by limiting the applicability of the attorney approval contingency to those circumstances where the reason for disapproval meets some standard or the concurrence of the plaintiffs, or their attorney. Defendants are entitled to the fruits of their bargain. There is no basis for a claim of bad faith or capriciousness on the part of defendants, or their attorney, in the use of this contingency provision, which would render the notice of disapproval ineffective.
We would also note that a contract for the purchase and sale of a residence determines the rights and responsibilities of the parties as to the entire transaction and is of such importance in this respect as to require preparation or, in the least, preliminary review by an attorney. A text writer has described the significance of the contract in the following manner:
The contract of sale is the key to the real estate transaction. It is the critical document which fixes the fundamental rights and obligations of the parties from the time it is signed through the closing of title and, in many cases, even beyond. [Horn, Residential Real Estate Law and Practice in New Jersey, § 1.1].
The complexity of the law of contracts and of real property demand that one qualified by education and experience determine the legal sufficiency of a real estate sale agreement and advise the prospective seller or purchaser as to the rights and obligations arising thereunder. Objective counseling by one's own attorney as to the practicability or desirability of undertaking the sale or purchase is also often necessary to avoid precipitous actions which may prove to be legally, financially or socially disadvantageous.
*603 The conclusion reached herein is in accord with the public policy as expressed by the Legislature by including the right of rescission in recent statutes pertaining to retail installment sales, financing of home repairs and the disposition of land in subdivisions. See N.J.S.A. 17:16C-61.5; N.J.S.A. 17:16C-99; N.J.S.A. 45:15-16.12(d).
Our determination that the contract was terminated by operation of the attorney approval contingency provision renders it unnecessary to consider the secondary question concerning the liability of defendant John Dwyer.
Accordingly, plaintiffs' motion for summary judgment for damages is denied and defendants' motion for summary judgment dismissing the complaint is granted.