OLYMPIC RESTAURANT CORPORATION, Plaintiff, v. BANK OF WHEATON *et al.*, Defendants (Jack H. Wager *et al.*, Third-Party Plaintiffs-Appellees; Chris Broches *et al.*, Third-Party Defendants-Appellants).

Second District  No. 2—93—0140

Opinion filed October 29, 1993.

Timothy S. Buckley and Samuel G. Kramer, both of DeFrees & Fiske, of Chicago, for appellants.

W. Randal Baudin, of McCuaig, Haeger, Bolz, McCarty & Baudin, of West Dundee, for appellees.

Konstandenos S. Bazianos, of Skoubis, Tarnaris & Skoubis, P.C., of Rolling Meadows, for Olympic Restaurant Corporation.

JUSTICE McLAREN delivered the opinion of the court:

The third-party defendant-appellant, Chris Broches, appeals from a grant of summary judgment by the circuit court of Du Page County in favor of the third-party plaintiffs-appellees, Jack H. and Sharon E. Wager, which rendered null and void a contract for the sale to Broches of the Wagers' home and other land in West Chicago. We affirm.

Under a contract dated October 25, 1991, Broches agreed to buy the Wagers' West Chicago home for $125,000. The contract, a printed form supplied by the Wagers' real estate agent, also contained a handwritten option under which Broches obtained the right to purchase additional lots from the Wagers for $75,000. The contract provided that Broches would pay earnest money of $2,500 for the home on or before November 8, 1991. Broches also agreed to pay $1,000 per month for four months for the option to purchase the additional lots. Broches never paid or tendered any money to the Wagers.

The printed portion of the contract contained an attorney review clause, which became the focus of the present dispute between the parties. That clause provided:

"14. Attorneys Review: The parties agree that their respective attorneys may review and make modifications, other than stated purchase price, mutually acceptable to the parties, within ten (10) business days after the date of the Contract acceptance. If the parties do not agree and written notice thereof is given to the other party within the time specified, then this Contract will become null and void, and all monies paid by the Purchaser will be refunded. IN THE ABSENCE OF WRITTEN NOTICE WITHIN THE TIME SPECIFIED HEREIN, THIS PROVISION WILL BE DEEMED WAIVED BY ALL PARTIES HERETO AND THIS CONTRACT WILL BE IN FULL FORCE AND EFFECT."

The 10-day review period expired on Friday, November 8, 1991. On October 30, 1991, the Wagers entered into a contract with Olympic Restaurant Corporation to sell the same home and lots as named in the Broches contract to Olympic Restaurant for a total of $220,000. On November 7, 1991, the attorney for the Wagers sent a letter to Broches and his lawyer which contained the following:

"Pursuant to paragraph 14 of said contract, please be advised that I do not approve said contract.

Thus I have enclosed herein my modifications and/or changes to the contract:

\* \* \*

If the above meets with your approval, kindly sign a copy of this letter and return it to the undersigned."

The same day, Broches' attorney, after apparently having received the above-quoted letter, sent a letter in response to the Wagers and their attorney, which included the following:

"Pursuant to the terms of Paragraph 14, Attorney's Review, please be advised that the following modifications should be made to the Contract:

\* \* \*

With regard to Seller's attorney approval letter dated November 7, 1991, I disagree with the following modifications and or changes.

\* \* \*

If the above modifications and changes as provided are acceptable, please acknowledge the same below and return to my office."

Neither side accepted the other's modifications. The only other correspondence presented in the record was a letter from the Wagers' attorney to Broches dated November 11, 1991, three days after the 10-day review period had expired, which included the following:

"My clients advise that they do not wish to accept your counter offer [sic] of November 7, 1991, and thus have authorized the return of your earnest money deposit. They thus consider this matter to be closed."

On November 26, 1991, Broches filed a copy of the original October 25 contract in the office of the Du Page recorder of deeds, which created a cloud on the title to the Wagers' property that blocked them from closing their sale with Olympic. On January 17, 1992, Olympic filed suit against the Wagers seeking specific performance of its contract with them.

On March 2, 1992, the Wagers filed a third-party complaint against Broches seeking to quiet title. The complaint sought a declaration that the October 25 contract with Broches was null and void and asked that Broches' recordation of the contract be invalidated. On May 6, 1992, the Wagers filed a motion for judgment on the pleadings against Broches. The motion was denied on June 19, 1992, when the trial court determined that uncertainty as to the meaning of the attorney review clause constituted a question of fact that required introduction of the evidence.

The Wagers then received leave to file an amended complaint. On September 4, 1992, they filed a motion for summary judgment, again seeking nullification of the Broches contract. The Wagers submitted affidavits in support of their motion which established that Broches had never paid any of the earnest money. Broches did not contest this claim, nor did he file any affidavits or depositions. Broches filed a memorandum of law arguing that his failure to pay earnest money did not constitute lack of consideration in support of the contract. He maintained that the promise to pay earnest money, not the actual payment, was the true consideration. Broches also argued that the meaning of the attorney review clause was ambiguous and required a trial to clarify.

After a hearing on September 14, 1992, the trial court granted summary judgment for the Wagers, finding that the November 7, 1991, letters between the attorneys for Broches and Wagers constituted counteroffers, neither of which was ever accepted by the other party. Thus, the court ruled the October 25 agreement was not binding because there was no valid offer and acceptance. The court also

declared that the failure to pay earnest money was relevant only as an indication that Broches considered the contract to be nonbinding.

On December 30, 1992, the trial court denied Broches' motion for reconsideration following a hearing. This appeal followed. Broches raises two claims on appeal: (1) that the trial court erred in granting summary judgment because there was a genuine issue of material fact pending; and (2) the court erred in concluding that the contract in question was terminated by the parties pursuant to the attorney review clause.

On appeal of a trial court's grant of summary judgment, we have *de novo* review. (*Wright v. St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis* (1992), 229 Ill. App. 3d 680, 683.) Summary judgment should not be granted unless "the right of the moving party is clear and free from doubt." (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240; see also *Palomar v. Metropolitan Sanitary District* (1992), 225 Ill. App. 3d 182, 188.) " 'Summary judgment is properly granted when the pleadings, depositions, and affidavits show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.' " (*Wright*, 229 Ill. App. 3d at 682, quoting *Gardner v. Navistar International Transportation Corp.* (1991), 213 Ill. App. 3d 242, 246; Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c) (now 735 ILCS 5/2—1005(c) (West 1992)).) Evidence in support of the motion must be strictly construed against the moving party. *Siegel v. Levy Organization Development Co.* (1991), 219 Ill. App. 3d 579, 585.

■ In contract cases, a genuine issue of material fact exists when a key element of a contract contains an ambiguity requiring the admission of extrinsic evidence. (*Village of Glenview v. Northfield Woods Water & Utility Co.* (1991), 216 Ill. App. 3d 40, 49.) In such cases, granting summary judgment is improper. (*Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 272.) Conversely, if the intent of the parties can be determined from the plain language of the contract, no genuine issue of material fact exists. (*Glenview*, 216 Ill. App. 3d at 49.) In such cases, summary proceedings are appropriate. *Walgreen Co. v. American National Bank & Trust Co.* (1972), 4 Ill. App. 3d 549, 554.

Whether an ambiguity exists is a question of law for the court to decide. (*Elliott v. L R S L Enterprises, Inc.* (1992), 226 Ill. App. 3d 724, 730; *Newcastle Properties, Inc. v. Shalowitz* (1991), 221 Ill. App. 3d 716, 722.) In making this determination, the trial court may draw inferences from undisputed facts. (*Wright*, 229 Ill. App. 3d at 683.) However, if reasonable persons could draw different inferences from

the undisputed facts, the issue should proceed to trial and not be decided by summary proceedings. *Glenview*, 216 Ill. App. 3d at 47.

In granting summary judgment for the Wagers, the trial court declared that the "clear implication" of the attorney review clause was "that within the stated time, the attorneys for the parties may make modifications and that if those modifications are not agreed within the specific time, then the contract becomes null and void." The court found clear, unambiguous language in the November 7 letters between the parties' attorneys invoking the attorney review clause and clear expressions that the original contract was not acceptable to either side. Thus, the court concluded that the letters were counteroffers which, as a matter of law, nullified the October 25 agreement. We agree.

■ Both November 7 letters clearly referred to the attorney review clause and stated that the terms of the contract as originally entered into were not acceptable. Both proposed modifications required the other party to agree in order to render the agreement binding. Thus, under long-settled contract principles, the letters amounted to counteroffers, which operated as rejections of the original agreement and proposals for new agreements. See *Loeb v. Gray* (1985), 131 Ill. App. 3d 793, 799 ("An acceptance requesting modification or containing terms that vary from those offered constitutes a rejection of the original offer and becomes a counterproposal that must be accepted by the original offeror before a valid contract is formed").

In their briefs, the parties disagreed as to the meaning of the attorney review clause and the effect of the November 7 writings, but such disagreements alone do not mean that the clause is ambiguous and that its meaning must be determined in an evidentiary hearing. (*Newcastle*, 221 Ill. App. 3d at 722-23, citing *Hickox v. Bell* (1990), 195 Ill. App. 3d 976, 990.) Indeed it would be anomalous for parties in a dispute over the effect of a certain contract provision to agree as to its meaning. There would be no reason to seek the court's intervention.

The construction of an attorney review clause was discussed by the Appellate Court, Third District, in the case of *Anand v. Marple* (1988), 167 Ill. App. 3d 918. Although the wording of the attorney review clause in *Anand* differs from the clause at issue here, the logic and ruling of *Anand* are instructive. The appellate court in *Anand* affirmed the trial court's grant of summary judgment in favor of the owner of a farm who sought nullification of a contract for sale of the farm. In declaring the contract void, the trial court construed a handwritten attorney approval clause which was so sloppily written that

the court could not decipher the clause's most important word. The word was included in the following sentence: "This offer is subject to seller's (*indecipherable word*)." (Emphasis in original.) (*Anand*, 167 Ill. App. 3d at 919.) The defendant-owner of the farm contended the final word was "attorney." The plaintiff claimed the word was definitely not "attorney" but suggested no alternative word.

The appellate court also was unable to discern what the final word was but found that "the parties' use of the 'subject to' language in the document unambiguously indicates that the document was subject to some unknown, illegible, and indecipherable condition subsequent." (*Anand*, 167 Ill. App. 3d at 921.) That was sufficient, the appellate court found, to conclude that the document "fell short of a binding or enforceable contract." (*Anand*, 167 Ill. App. 3d at 921.) In the present matter there was no uncertainty that the parties' attorneys had the right to review the contract.

Broches cites *R.S. & V. Co. v. Atlas Van Lines, Inc.* (7th Cir. 1990), 917 F.2d 348, for the proposition that when a party declares it will not renew a contract unless it is modified, the declaration does not break the agreement but is only an invitation to negotiation. This accurately reflects language of the case, but it does not support Broches' position in the present matter. In *Atlas Van Lines*, the parties had a long-standing contract that was undoubtedly in full force and effect when one of the parties sent the other notice that he would not renew their contract upon expiration unless certain concessions were made. In the present matter the issue is whether a binding agreement ever existed.

Another case cited by Broches is close factually to the present matter and instructive. In *Indoe v. Dwyer* (1980), 176 N.J. Super. 594, 424 A.2d 456, the seller of a home claimed that the buyer breached their contract by invoking an attorney review clause to reject the agreement without stating a reason. The court held that while the review clause must be invoked in good faith, it is not necessary for a party to state a reason when rejecting a contract pursuant to a review clause because the attorney's right to disapprove is a proper exercise of his or her judgment. (*Indoe*, 176 N.J. Super. at 601, 424 A.2d at 460.) In making its ruling, the court in *Indoe* declared:

> "The purpose of such an attorney approval clause is to provide the purchaser or seller with the opportunity of obtaining legal advice with respect to the transaction, and its value lies in the fact that the contract may be canceled upon receiving such advice. Parties to a real estate transaction are entitled to the benefit of the judgment of a trusted counselor, and an approval

contingency is designed to accord this right to those who, for some reason, enter into a purchase and sale agreement before reviewing the matter with their attorney [*sic*]." *Indoe,* 176 N.J. Super. at 601, 424 A.2d at 460.

We believe this is sound logic and should apply in the present matter. The only reason to have an attorney review clause is to give the parties to a contract, who may not be sophisticated in matters relating to real estate and/or contracts, a chance to have their attorneys scrutinize the offer before final acceptance. In the present matter, if there was no way for the parties to get out of the October 25 contract during the review period, the review clause was meaningless and the attorney review process was a pointless exercise.

It is true, as Broches suggests in his brief, that the Wagers' actions in signing a contract with Olympic while their agreement with him was pending raised a question of bad faith on the part of the Wagers. However, the trial court properly dealt with this matter. In arriving at its ruling on the motion to reconsider, the trial court decided to ignore the November 7 letter written by the Wagers' attorney because it may have been tainted by a bad-faith attempt to get out of the Broches contract in favor of the more lucrative Olympic agreement. The court concluded, and we agree, that the November 7 letter written by Broches' attorney was by itself a rejection of the original contract and a counteroffer. Thus, regardless of the Wagers' apparent bad faith, Broches disapproved the October 25 agreement and made a counteroffer that was never accepted.

Broches' letter of November 7 states clearly that the original deal is not acceptable and requests significant changes, including a proposal to consolidate into one sales contract the purchase of the Wagers' home and the option for the additional parcels of land. Broches' letter also proposed increasing the amount to be financed under the agreement to include financing for the parcels of land. This was not part of the original agreement, which called for financing only of the Wagers' home. The handwritten option on the October 25 contract detailed no financing arrangements.

The attorney review clause could have been drafted with greater clarity, but the key language provided that "[i]f the parties do not agree and written notice thereof is given *** then this Contract is null and void." What that phrase does not make clear is what the parties may not "agree" to. If the phrase means "if the parties do not agree to the *contract*," then clearly either side has the right to void the deal by giving written notice. If the phrase means "if the parties do not agree to *modifications*," however, the result is the same on

these facts. The parties clearly did not agree to modifications, and there was written notice of that in the November 7, 1991, letters from the parties' attorneys.

The review clause does not spell out formalities for the required written notice. However, the November 7 letters by both attorneys were obviously writings, both were signed, both were sent within the 10-day approval period, and Broches' letter even acknowledged receipt of the Wagers' modifications. Thus, the letters were sufficient, in the absence of specific requirements, to provide written notice of disagreement.

The trial court also found that Broches' failure to pay or tender any earnest money bolstered the claim that the November 7 letters were counteroffers. We agree. When seeking to determine the intent of the parties to a contract, courts may look to the acts or conduct of the parties. (*Thread & Gage Co. v. Kucinski* (1983), 116 Ill. App. 3d 178, 183.) In the present matter, Broches' actions were those of a person who did not believe he had a binding contract. He never paid any earnest money. He did not, according to the record submitted, respond to or challenge the letter from the Wagers' attorney dated November 11 stating that the Wagers considered the contract void. Broches filed no claims or actions against the Wagers. The only affirmative act by Broches that would indicate he considered the October 25 contract valid was his recordation on November 26, 1991, of the contract.

Broches also suggests in his brief that the trial court's grant of summary judgment was inappropriate because it was granted on exactly the same evidence as was presented to the court when it denied an earlier motion for judgment on the pleadings. This argument misstates the facts.

To begin with, a trial court has the power to review any of its own orders until final adjudication, absent a statutory prohibition. (*James C. Wilborn & Sons, Inc. v. Heniff* (1965), 56 Ill. App. 2d 217, 223.) In the present matter, the trial court's ruling denying judgment on the pleadings was not a final order, and no statute bars its review by the trial court. Additionally, the trial court did not, as Broches suggests, base its decision in granting summary judgment on exactly the same evidence it considered earlier. Affidavits not before the court for the judgment on the pleadings motion were presented for the summary judgment motions. Those affidavits, offered by the Wagers, demonstrated that Broches had paid no earnest money, and this supported the court's finding that Broches considered the October 25 contract void.

Although the nonmoving party in a summary judgment motion is not required to prove his case, he must nonetheless present a factual basis which would arguably entitle him to a judgment. (*Lutz v. Goodlife Entertainment, Inc.* (1990), 208 Ill. App. 3d 565, 568.) "If a party moving for summary judgment supplies facts which, if not contradicted, would entitle such party to a judgment as a matter of law, the opposing party cannot rely on his pleadings alone to raise issues of material fact." (*Purtill*, 111 Ill. 2d at 240-41.) The Illinois summary judgments statute provides that the party opposing such a motion may "prior to or at the time of the hearing on the motion file counteraffidavits. The judgment sought shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c) (now 735 ILCS 5/2—1005(c) (West 1992)).

In the present matter, Broches made no attempt, other than through argument and submission of a memorandum of law, to demonstrate that any issue of material fact existed that required a trial. Broches' attack on the motion for summary judgment consisted of his contentions that an ambiguity existed in the attorney review clause and that his failure to pay earnest money did not result in failure of consideration. As we noted above, the trial court correctly decided as a matter of law that there was no ambiguity. Because the trial court properly determined that the original agreement was void for lack of a proper offer and acceptance, it is not necessary to consider Broches' argument as to consideration.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

DOYLE and QUETSCH, JJ., concur.