STEPHEN GROSHEK *et al.*, Plaintiffs-Appellants, v. JAMES FRAINEY *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—94—2361

Opinion filed July 25, 1995.—Rehearing denied September 8, 1995.

Joseph J. Cavanaugh, of Chicago (Brian J. Walsh, of counsel), for appellants.

Scott Z. Berman, of Skokie, for appellees.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Under a contract dated May 15, 1993, defendants James and Holly Frainey agreed to purchase plaintiffs Stephen and Joanne Groshek's home for $310,000. The contract, consisting of a realty board's form supplied by defendants' real estate broker, included an attorney approval clause (the approval clause or the clause) which in pertinent part provided:

"It is agreed by and between the parties hereto as follows: That their respective attorneys may approve or make modifications, other than price and dates, mutually acceptable to the parties. Approval will not be unreasonably withheld, but if within [five business] days after the date of acceptance of the Contract, it becomes evident agreement cannot be reached by the parties hereto, and written notice thereof is given to either party within the time specified, then this Contract shall become null and void, and all monies paid by the Purchaser shall be refunded."

Defendants' attorney avers that within the five-day period referred to in the contract he spoke via speaker phone to both Mr. Groshek and his attorney, and expressed disapproval of the contract, one reason being concern over the zoning of an adjacent parcel. Plaintiffs contend that defendants' attorney explained that he was withholding approval since the defendants had changed their minds, and that any other reason he gave for doing so was merely pretextual and after the fact. In any event, on that same day, defendants' attorney faxed plaintiffs' attorney a notice of disapproval that did not explain why approval was being withheld, but simply stated:

"Pursuant to the Attorney's Approval Rider 708 attached to the contract ***, I hereby withhold my approval of said contract."

In their complaint, plaintiffs stated that to invoke the approval clause properly, defendants' attorney was required to state his reasons for doing so in the form of proposed modifications, and absent such proposals, the contract never became "null and void"; defendants therefore breached their contract and caused plaintiffs to relist their property and sell it at a reduced price of $290,000.

On April 6, 1994, defendants filed a motion to dismiss the complaint for failure to state a cause of action (735 ILCS 5/2—619(a)(9) (West 1992)), contending that only a good-faith standard governed the approval clause, and that their attorney was not required to propose modifications or to explain why he was withholding approval; thus, his written notice of disapproval made the contract "null and void." Thereafter, defendants' motion to dismiss was granted, and plaintiffs now appeal from that order.

■ We disagree that the failure to state a cause of action is amenable to attack by a motion to dismiss under any provision of section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)), for that statute assumes that a cause of action has been stated but that it is subject to dismissal by virtue of an affirmative defense entitling the movant to judgment. (See *Barber-Colman Co. v. A&K Midwest Insulation Co.* (1992), 236 Ill. App. 3d 1065, 1068-75, 603 N.E.2d 1215.) Nevertheless, in the interest of conserving judicial resources, we shall treat the motion as one for summary judgment, which appears to be the basis upon which the proceeding was heard by the trial judge. See *Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center* (1985), 137 Ill. App. 3d 294, 299, 484 N.E.2d 841.

■ Summary judgment motions permit the trial court to determine whether any genuine issue of material fact exists in the action, and if not, to provide an expedient means of resolution. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) When deciding the motion, the trial court should construe all the evidence before it strictly against the movant. Our supreme court has warned that while summary judgments are to be encouraged in the interest of prompt disposition of lawsuits, they are a drastic measure. Consequently, trial courts should grant summary judgments only where the movant's right to judgment is so clear as to be free from doubt. (*Purtill*, 111 Ill. 2d at 240.) This court reviews the grant of summary judgment *de novo. Myers v. Health Specialists, S.C.* (1992), 225 Ill. App. 3d 68, 72, 587 N.E.2d 494.

Plaintiffs argue essentially that defendants' attorney's disapproval amounted to a mere rejection of the contract, not also a counteroffer, and that the clause could have been effectively invoked by him only if he had made a counteroffer by submitting proposed modifications, thereby providing plaintiffs with an opportunity to accept such counteroffer (having amended the contract), an opportunity which defendants' attorney's flat rejection did not present.

■ The main objective in construing a contract is to determine and give effect to the intention of the parties at the time they entered into the contract. (*Zale Construction Co. v. Hoffman* (1986), 145 Ill. App. 3d 235, 241, 494 N.E.2d 830; *Ancraft Products Co. v. Universal Oil Products Co.* (1981), 100 Ill. App. 3d 694, 697, 427 N.E.2d 585.) An ambiguity is not created by the mere fact that, as here, the parties do not agree upon an interpretation. (*Zale Construction Co.*, 145 Ill. App. 3d at 241; *Harlem-Irving Realty, Inc. v. Alesi* (1981), 99 Ill. App. 3d 932, 936, 425 N.E.2d 1354.) The question of whether a contract is clear or ambiguous is a question of law for the court. (*Tishman Midwest Management Corp. v. Wayne Jarvis, Ltd.* (1986), 146 Ill. App.

3d 684, 689, 500 N.E.2d 431.) If an agreement is unambiguous, the intent of the parties must be determined as a matter of law from the writing itself. *Quake Construction, Inc. v. American Airlines, Inc.* (1990), 141 Ill. 2d 281, 288, 565 N.E.2d 990.

■ A contract which contains an attorney approval clause is appropriately construed as a qualified or conditional acceptance of the terms of that contract. Invocation of the clause triggers a rejection of the contract and, at times, a counteroffer. See generally 2 Williston on Contracts § 6:13, at 104-18 (4th ed. 1991) (conditional acceptance occurs when a party to an agreement imposes as a condition of the bargain the favorable opinion of his lawyer).

Despite extensive discussion concerning the theory that such a clause should be interpreted to mean that the attorney's right of approval is restricted to negotiating the inclusion of certain standard clauses or the modification of already included provisions, the courts that have interpreted the clause have given the attorney a much wider scope of authority, permitting disapproval of the contract for any reason, limited only by an implied covenant of good faith. See Annot., 15 A.L.R.4th 760-61 (1982); see also 15B Am. Jur. Legal Forms, Real Estate Sales § 219:923 (2d ed. 1994) (for an example of a standard "attorney's approval" clause).

Giving such broad latitude to the attorney, the position recently adopted by the second district of this court in *Olympic Restaurant Corp. v. Bank of Wheaton* (1993), 251 Ill. App. 3d 594, 622 N.E.2d 904, is in keeping with the singular purpose for including approval clauses in real estate sales contracts, which "is to give the parties to a contract, who may not be sophisticated in matters relating to real estate and/or contracts, a chance to have their attorneys scrutinize the offer before final acceptance." (*Olympic Restaurant*, 251 Ill. App. 3d at 601, relying heavily on *Indoe v. Dwyer* (1980), 176 N.J. Super. 594, 424 A.2d 456.) This is particularly true in residential sales contracts, as to which the parties are more often than not lacking in the sophistication alluded to in *Olympic*.

In that case, pursuant to a clause in the contract that gave the parties' respective attorneys the right to "review and make modifications," each attorney sent the other a letter within the prescribed notice period, both of which expressed disapproval of the contract as drafted and both of which suggested modifications, which neither side accepted. *Olympic Restaurant*, 251 Ill. App. 3d at 596-97.

The court began its analysis by construing the contract as a qualified or conditional acceptance. *Olympic Restaurant*, 251 Ill. App. 3d at 599-600, citing *Anand v. Marple* (1988), 167 Ill. App. 3d 918, 921, 522 N.E.2d 281 (terms of contract "unambiguously indicate[d] that the document was subject to some *** condition subsequent").

While noting that the sellers' actions raised a question of bad faith on their part for having entered into a contract with a different purchaser for more money, the court determined that the purchasers' attorney's letter was by itself a rejection of the original contract and, because it included proposed modifications, a counteroffer. (*Olympic Restaurant*, 251 Ill. App. 3d at 601.) The court then determined that the purchasers' submission of proposed modifications made acceptance of the contract further contingent upon the parties reaching an "agree[ment]," but that the terms of the clause were unclear as to whether the parties had to "agree to the *contract*" or "agree to [the proposed] *modifications*." (Emphasis in original.) (*Olympic Restaurant*, 251 Ill. App. 3d at 601-02.) The court, however, felt no need to resolve the ambiguity because the parties obviously had failed to reach an agreement as to either the contract or any of the proposed modifications. *Olympic Restaurant*, 251 Ill. App. 3d at 601-02.

Plaintiffs contend that *Olympic Restaurant* supports their position since the purchasers' attorney there furnished the reasons for his disapproval of the contract in the form of proposed modifications, which, plaintiffs argue, is what defendants' attorney was required to do under the clause at issue here. However, plaintiffs fail to recognize that the court in *Olympic Restaurant*, as we have already noted, fully embraced the view that under an attorney approval clause an attorney need not state the reasons for his disapproval of a contract because the attorney's right to disapprove is a wholly proper exercise of his judgment, limited only by good faith. *Olympic Restaurant*, 251 Ill. App. 3d at 600, citing *Indoe*, 176 N.J. Super. at 601, 424 A.2d at 460.

In addition, although the court found some ambiguity in the approval clause at issue there, no similar ambiguity exists in the clause we have for consideration here. In *Olympic Restaurant* the contested provision gave the parties' attorneys the right to "*review and* make modifications"; whereas, the clause in the instant case grants the parties' attorneys the right to "*approve or* make modifications." (Emphasis added.) The instant clause's use of "approve" and "or," rather than "review" and "and," prevents any similar ambiguity from arising here. According to Webster's Third New International Dictionary, synonyms for "approve" are "sanction, endorse, accredit, [and] certify"; whereas, "review" is defined as "looking over or examin[ing] with a view to amendment or improvement." Webster's Third New International Dictionary 106, 1944 (1986).

Furthermore, plaintiffs' interpretation of the approval clause here as focusing on "proposed modifications" is contraindicated by

the plain language of the first sentence of the clause, which is phrased in the disjunctive, *i.e.*, that the parties' "respective attorneys may approve *or* make modifications." (Emphasis added.) No ambiguity exists as to whether "approval" refers to the approval of the contract as opposed to the approval of any proposed modifications, the latter interpretation being contrary to the sole purpose, as noted in *Olympic Restaurant* (251 Ill. App. 3d at 601), behind the inclusion of attorney approval clauses in real estate contracts.

> " 'The purpose of such an attorney approval clause is to provide the purchaser or seller with the opportunity of obtaining legal advice with respect to the transaction, and its value lies in the fact that the *contract* may be *canceled* upon receiving such advice. Parties to a real estate transaction are entitled to the benefit of the judgment of a trusted counselor, and an approval contingency is designed to accord this right to those who, for some reason, enter into a purchase and sale agreement before reviewing the matter with their attorney [*sic*].' " (Emphasis added.) (*Olympic Restaurant*, 251 Ill. App. 3d at 600-01, quoting *Indoe*, 176 N.J. Super. at 601, 424 A.2d at 460.

Moreover, as we have noted above, the use of the disjunctive in the clause provides both parties' attorneys with the option to either approve the contract "or" to make modifications to the contract. Nowhere does the language of the contract require them to set forth reasons for their disapproval in the form of proposed modifications or otherwise, nor does the use of "approval" imply such a requirement; rather, it implies the opposite. *USG Interiors, Inc. v. Commercial & Architectural Products, Inc.* (1993), 241 Ill. App. 3d 944, 948, 609 N.E.2d 811 (a court must construe the meaning of a contract by looking at the words used and cannot interpret a contract in a way which is contrary to the plain and obvious meaning of those words).

■ Consequently, we repeat that there is no ambiguity; the instant clause allowed either party's attorney to reject the contract outright without needing concomitantly to propose any modifications.

Quoting the second sentence of the clause, plaintiffs also maintain that "approval [may] not be unreasonably withheld" and that defendants' attorney's written notice amounted to an unreasonable withholding of approval since it failed to propose modifications to the contract.

While the clause prohibits an attorney from "unreasonably" withholding approval of the contract, the withholding of approval without also proposing any modifications is not unreasonable, for it would be the sheerest form of tautology at this juncture to point out that nothing in the clause requires either parties' attorney to spell out his

reasons for disapproving of the contract in the form of proposed modifications. Assuming, *arguendo*, that it may be unreasonable for an attorney, after he has disapproved a contract, to refuse to explain the basis for having done so, we note that here, after receiving defendants' attorney's letter of disapproval, plaintiffs' attorney responded with a letter stating plaintiffs' position, *viz.*, that defendants were still bound by the contract since their attorney's written notice did not suffice to properly invoke the approval clause. Defendants responded, in turn, with a letter from their attorney which stated that he did not feel that under the terms of the approval clause he was required to give the reasons for his disapproval, but that he would be willing to do so if either plaintiffs or their attorney desired an explanation. Neither plaintiffs nor their attorney ever accepted defendants' attorney's offer to do so.

Accordingly, since nothing in the record indicates that defendants' attorney refused to explain the basis for his disapproval of the contract, but suggests otherwise, plaintiffs' argument here fails. Consequently, for the aforementioned reasons we affirm the judgment of the trial court.

Affirmed.

DiVITO and McCORMICK, JJ., concur.